VANRANST (UNITED STATES v.). See Case No. 16,608.

---

## Case No. 16,871.

### VAN REIMSDYK v. KANE et al.

### [1 Gall. 371.] [1]

Circuit Court, D. Rhode Island.    Nov. Term, 1812.

INSOLVENCY LAWS—DISCHARGE OF DEBTOR—FOREIGN DEBTS — CONFLICT OF LAWS — RIGHTS AND REMEDIES—PARTIES IN EQUITY—PARTNERSHIP.

1. The discharge of a citizen from his debts, under the insolvent act of Rhode Island, is no discharge of a contract, which was made and to be executed in a foreign country.

[Cited in Le Roy v. Crowninshield, Case No. 8,269.]

[Cited in brief in McDougall v. Page, 55 Vt. 189; Pratt v. Chase, 44 N. Y. 598.]

2. The law of the place, where a contract is made, is to govern as to the validity, nature, and construction of the contract; but the remedy on such contract is to be pursued according to the law of the place where the suit is brought.

[Cited in Gill v. Jacobs. Case No. 5,426; Lee v. Gamble, Id. 8,189; Burrows v. Hannegan, Id. 2,205; Woodhull v. Wagner, Id. 17,975; Fitch v. Remer, Id. 4,836; Pope v. Swiss Lloyd Ins. Co., 4 Fed. 155.]

[See Babcock v. Weston, Case No. 703.]

[Cited in Brown v. Bicknell, 1 Pin. 229; Dyer v. Hunt, 5 N. H. 405; Emery v. Burbank, 163 Mass. 326, 39 N. E. 1026; Gilman v. Cutts, 23 N. H. 382; Houghton v. Page, 2 N. H. 46; Hunt v. Jones, 12 R. I. 267; Lowther v. Lawrence. Wright. 186; McAllister v. Smith, 17 Ill. 335; Nelson v. Fotterall, 7 Leigh, 210; Sneed v. Ewing, 5 J. J. Marsh. 483.]

3. Every person interested in the subject-matter should in general be made a party to a bill in equity. But no one need be made a party, against whom, if brought to a hearing, there can be no decree. Therefore a certificated insolvent or bankrupt, if discharged from the particular contract on which relief is sought, need not be made a party.

[Cited in Lawrence v. Rokes, 53 Me. 117.]

4. A bill to charge the executors of a deceased partner with a partnership debt, where the other. partner survives, must expressly charge an insolvency of the survivor.

[Cited in Troy Iron & Nail Factory v. Winslow, Case No. 14,199.]

[Cited in Riper v. Poppenhausen, 43 N. Y. 74.]

The plaintiff is an inhabitant of Batavia in the island of Java, and the bill is brought

to recover against [Oliver Kane and another] the executors of [John Innes] Clarke the amount of a bill of exchange drawn in behalf of the owners of the ship Patterson, by Benjamin Monroe, their agent at Batavia. on a mercantile house in Amsterdam for 21,-488 guilders. The bill of exchange was dated 3 Nov., 1806, payable at nine months sight. was presented and protested for non-acceptance, 30 December, 1807, and was presented and protested for non-payment, 4 Oct., 1808. The bill charged in substance, that Clarke and the firm of Monroe, Snow & Monroe (of which firm Benjamin Monroe was one), were owners of the Patterson, and that the bill was duly drawn by their authorized agent for their use; that on the 25th of March, 1809, Monroe. Snow & Monroe, being insolvent, were duly discharged from all their debts under the insolvent act of Rhode Island, that afterwards Clarke died, leaving Monroe, Snow & Monroe living, and yet alive, and that the executors had assets in their hands sufficient to pay all the debts of Clarke, including this debt. The bill stated also, that the whole property of Monroe, Snow & Monroe was duly assigned to assignees under the insolvent act, and that a small sum came to their hands, which was wholly insufficient to discharge this debt. The bill contained other charges not necessary to be mentioned in this stage of the cause. The answer of the executors admitted assets. and that Clarke, Monroe. Snow & Monroe were owners of the Patterson, and that Monroe. Snow & Monroe were discharged under the insolvent act of Rhode Island. But it did not admit, that the bill of exchange was drawn by an authorized agent, but admitted that the proceeds thereof came to the use of the owners. It did not admit that the discharge of Monroe, Snow & Monroe was a valid bar at law to a recovery on the bill of exchange, nor that they were now insolvent or unable to pay their debts. The deposition of James Monroe, Samuel Snow, and Benjamin Monroe (the drawer of the bill), who composed the firm of Monroe. Snow & Monroe, were taken in behalf of the complainant in the cause; and upon objections being taken to their competency as witnesses, STORY, Circuit Justice, admitted the depositions of James Monroe and Samuel Snow, and rejected that of Benjamin Monroe. the drawer. A preliminary objection, however. being taken to the want of proper parties in the cause. the argument was chiefly confined to that objection.

Mr. Bridgham and Thomas Burgess, for complainant, contended that it was not necessary to make Monroe. Snow & Monroe, or their assignees, parties to the bill. 1. Because the insolvency of the firm. and subsequent discharge, was a valid bar to an action at law and in equity against them. 2. Supposing that not correct, yet if in fact insolvent, there was no necessity of making them parties. and they cited 1 P. Wms. 683;

---

[1] [Reported by John Gallison, Esq.]

1 Har. Ch. Prac. 36; Mitf. Eq. Pl. 311; 1 Chit. Pl. 37.

Searle & Burrill, for respondents, contended, that Monroe, Snow & Monroe, and their assignees, ought to have been made parties to the bill. That the discharge did not operate a bar to the present cause of action, and if it did, yet the other partner had a right to their assistance in taking the account, and the benefit of the funds in the hands of the assignees ought to go in discharge of the respondents, and they cited 1 Har. Ch. Prac. 76, c. 3. § 1; Mitf. Eq. Pl. 39, 144, 220; Brown, Ch. 225; 2 Vent. 348; 2 Ch. Cas. 92; 1 Vern. 140; 3 Atk. 406; Finch, 15; Com. Dig. "Chancery" (3 V. 2); 1 Com. Cont. 327. At all events the assignees ought to have been made parties.

STORY, Circuit Justice. The first question seems to be, whether the discharge of the firm of Monroe, Snow & Monroe under the insolvent act of Rhode Island is a complete discharge of them from this debt. The language of the insolvent act itself (1756) is, that a discharge under it shall be a perfect discharge "of and from all debts, duties, co t-tracts, and demands, of every nature and kind whatsoever, that shall be at that time outstanding against the debtor, debts due to the crown itself only excepted." And section 6 provides, that every creditor who shall not prove his debt before the commissioners within the time limited by the act, shall not be entitled to have any action or suit therefor "at any court within this colony," "and that this act being pleaded in bar, shall be sufficient to bar the same." By an act of the legislature of Rhode Island, the full benefit of this act was allowed to the firm of Monroe Snow & Monroe, and the only exception was of debts due to the state. It is admitted on all sides, that Monroe, Snow & Monroe have been duly discharged under the act from all debts, upon which it can operate as a bar. It will be recollected, that the contract in controversy was made at Batavia with the complainant, a resident merchant there, and an alien to the United States. He never was a citizen of, or resident within Rhode Island. The contract was to be executed at Amsterdam in Holland, and not in Rhode Island.

The broad question then is, whether a discharge under the insolvent laws of a state is a complete discharge of all debts and contracts, with whomsoever and wheresoever contracted, so that no action lies therefor in a court of the United States sitting within that state. The rule is well settled, that the law of the place, where a contract is made, is to govern, as to the nature, validity, and construction of such contract; and that being valid in such state, it is to be considered as equally valid, and to be enforced everywhere, with the exception of cases in which the contract is immoral or unjust, or in which the enforcing it in a state will be injurious to the rights, the interest, or the convenience of such state or its citizens. This doctrine is explicitly avowed in Huberus de Conflictu Legum (2 tom. lib. 1, tit. 3), and has become incorporated into the code of national law in all civilized countries (Smith v. Smith, 2 Johns. 235; Thompson v. Ketcham, 4 Johns. 285; Van Raugh v. Van Arsdaln, 3 Caines, 154; Smith v. Buchanan, 1 East, 6; Potter v. Brown, 5 East, 124; Pedder v. MacMaster, 8 Term R. 609; Quin v. Keefe, 2 H. Bl. 553; 1 Emer. Traite des Assur. c. 4, § 8; Dig. lib. 6, "De Evictionibus"; Casaregis Disc. 179, per. tot. Id. § 57; Casaregis Disc. 43, § 19; Decis. Rot. Genuæ, 38; Straccha, 147; Casar. Disc. 130. §§ 28, 33, 34). It would seem to follow from this doctrine, that if a contract be void by the law of the place where it is made, it is void everywhere (Hub. ubi supra), and that what is a discharge of a contract in the place where it is made, shall be of equal avail in every other place (Hub. ubi supra; 5 East, 124; Burrows v. Jemino, 2 Strange, 733; 2 H. Bl. 553; Melan v. Fitzjames, 1 Bos. & P. 138). To the last position there is an exception, when the contract is to be executed in a place different from that where it is made; for the law of the place of the execution will in such cases apply. Hub. ubi supra; Van Schaick v. Edward, 2 Johns. Cas. 355; Baker v. Wheaton, 5 Mass. 509; Thompson v. Ketcham, 4 Johns. 285; Smith v. Smith, 2 Johns. 235; Robinson v. Bland, 1 W. Bl. 258; s. c., 2 Burrows, 1077. But as to the form of the action or the remedy by which a contract is to be enforced, a different rule prevails, and it seems on all sides conceded, that the recovery must be sought, and the remedy pursued, not according to the lex loci contractus, but according to the lex fori. Hub. ubi supra; Casaregis Disc. 179; Id. Disc. 130. § 33; Nash v. Tupper, 1 Caines, 402; Ruggles v. Keeler, 3 Johns. 268; Pearsall v. Dwight, 2 Mass. 84; Smith v. Spinola, 2 Johns. 198. The only question, which seems to have arisen, is, whether a bar, good by the law of the place where the suit is brought, and not where the contract originated, and conversely, a bar good by the law of the place where the contract was made, and not where the suit was brought, should fall within the rule as to the validity or as to the remedy of the contract. The current of authority is certainly in favor of the latter construction, where the bar has been a prescription or statute of limitations; and yet strong reasons have been urged, with what force I will not pretend to say, that every bar which goes to the merits of the action, and makes an end of it, should fall within the rule, that declares a discharge good in the place of the contract, equally good in every other place; and a bar of the statute of limitations is as much a discharge of the contract, as a bar of bankruptcy. Both are positive regulations, which prohibit a future action, and no more. In each the original cause of action may be revived by a new promise; and yet the au-

thorities show, that a discharge under the statute of bankruptcy of the country is a complete bar to the action on a contract made in that country in every other judicial forum. Ballantine v. Golding, cited 8 Term R. 609; s. c., cited 1 East, 6; Potter v. Brown, 5 East, 124; 1 Dall. [Pa.] 188; Id. 229; 2 Johns. 235. However, it is not necessary to consider, which of the opinions ought to prevail; and it will be time enough to meet this important question when it comes directly in judgment.

In order to clear the way for a more exact consideration of the question at bar, it may also be necessary to state, that every state has within its own sovereignty an authority to bind its citizens every where, so long as they continue their allegiance. Unless, therefore, it be restrained by constitutional prohibitions, it may act upon the contracts made between its own citizens in every country, and consequently may discharge them by general laws. But such is not the operation of jurisdiction in contracts made by a citizen with a foreigner, in a foreign country. If in such case the legislature by positive laws nullify such contracts, it is certain that they cannot be enforced within its own tribunals, but elsewhere they remain with the original validity, which they had by the lex loci contractus. But if a statute be general, without a direct application to foreign contracts, the rule approved by Casaregis seems proper to be adopted, that its construction shall not be extended to such contracts. "Ratio est, quia statutum intelligit semper disponere de contractibus factis intra et non extra territorium suum." Casar. Disc. 130, §§ 14–16, 20, 22.

According to the principles then, which have been stated, if this had been a contract between two citizens or residents of the state of Rhode Island, or a contract made or to be executed in Rhode Island, the discharge under the insolvent law of that state would be a good bar. Ballantine v. Golding, cited 8 Term R. 609; Cook. Bankr. Law, 515; 1 East, 6; Baker v. Wheaton, 5 Mass. 509; Potter v. Brown, 5 East, 124; Proctor v. Moore, 1 Mass. 198. Ought it to be a bar, when the contract was made in a foreign country, to be executed in a foreign country, and between parties, one of whom was not subjected to the jurisdiction of Rhode Island? The circumstance, that the contract was made by an agent, will not vary the case, for the law of the place of the contract still prevails, although it be made through an agent acting under authority, or it acquire its validity only from a subsequent ratification. Casar. Disc. 178, §§ 63, 80. It has been decided, that where the contract is in one state, the discharge in another, and the suit brought in a third state, the action is not barred. Smith v. Smith, 2 Johns. 235. So where the contract is made in the state where the suit is brought, a like discharge has been held no bar. Pedder v. MacMasters, 8 Term R. 609; Quin v. Keefe, 2

H. Bl. 553; Smith v. Buchanan, 1 East, 6; Van Raugh v. Van Arsdaln, 3 Caines, 154. Sitting therefore in Massachusetts or New Hampshire, I should have no difficulty, upon these authorities, to hold the present discharge no bar to a suit at law. But it is contended, that a different rule must prevail in the state courts of Rhode Island, and if so, then also in the courts of the United States, sitting within the same state.

I will consider this question in both respects, and first, as to the state courts of Rhode Island. No authority has been shown, that decides that no action upon a foreign contract could have been maintained in the state courts. It is a mere inference from the language of the act, which absolves the debtor from "all debts, &c. of every nature and kind whatsoever." But if the rule of Casaregis be correct, that by the true construction of a general statute, it ought not to be extended to extra-territorial contracts, unless expressly so declared, the question recurs with all its force, because it will not be pretended, that the legislature of Rhode Island have made such a positive provision. The general rule is, that a discharge of a contract according to the lex loci contractus is good every where. The rule is founded upon public convenience, and the comity of nations. It would seem to follow from the same principle, that a discharge under the municipal laws of a foreign state should not affect the validity of such a contract. I have not been able to find any case exactly in point. The case of Lynch v. McKenny before Mr. Justice Aston, cited in 2 H. Bl. 554, at first view would seem to have an important bearing; but it is very loosely stated, and the ground of the decision seems to have been, that the bankrupt laws of England were adopted in Ireland, and that the debt might have been proved under the commission in England. In Van Raugh v. Van Arsdaln, 3 Caines, 154. Livingston, J., declared, that he was of opinion, that a cessio bonorum under the laws of a state, where the debtor had his permanent domicil, ought to operate as a discharge from his creditors in every part of the world. I entertain the most entire respect for that opinion of the learned judge, the result, as he declares it to have been, of much reflection and research. I can only regret, that he did not express the reasons of that opinion at large, which would have saved me much labor and investigation. In the case, however, in which it was delivered, he differed from the rest of the court, and the final decision of the case was against him. The case of Miller v. Hall, 1 Dall. [Pa.] 229, must have proceeded upon the ground, that the contract was executed in Maryland; in any other view it would be inconsistent with the other authorities which have been cited. In Barber v. Minturn, 1 Day, 136, the point seems to have been before the court, but it does not appear how far it affected the judg-

ment of the court below; and in the appellate court the affirmance seems to have proceeded on other grounds.

These are all the cases, which I have met with on the subject, and I may be permitted to affirm, without the imputation of rashness, that the question does not seem to have been distinctly decided in any court in England or in the United States. It remains therefore to be settled upon principle, and I cannot but presume, that the judicial tribunals of Rhode Island, in all cases where a different rule were not prescribed by their own legislature, would adopt the jus gentium as to the construction and validity of foreign contracts sought to be enforced by their process. If therefore the words of the act of insolvency do not necessarily extend (as I think they do not) to foreign contracts, I can entertain no doubt, that they would adjudge therein according to that equity which the usage of nations had settled and applied. I hold it to be a legitimate inference from the doctrines already established, that a contract made in a foreign country, and to be governed and discharged by its laws, cannot be discharged by a mere positive regulation of another country, to which the parties have not bound themselves to submit. I hold with Emerigon (Des Assurances, 1 tom. c. 4, § 8), "Pour tout ce qui concerne l'ordre judiciare, on doit suivre l'usage du lieu ou l'on plaide. Pour ce qui est de la decision du fonds, on doit suivre en regle generale les loix du lieu ou le contrat a été passée. 'Ex consuetudine ejus regionis in quâ negotium gestum est.'" A discharge under an insolvent act goes "au fonds," to the merits, and not "a l'ordre judiciare," to the process or remedy. .

How far, since the constitution of the United States, any state can have a right to pass an insolvent law, having the effect of a general statute of bankruptcy, inasmuch as no state can pass "a law impairing the obligation of contracts;" and the United States are authorized "to establish uniform laws on the subject of bankruptcies throughout the United States;" and if a state have such authority, how far it can constitutionally discharge the debts due to citizens of other states, are questions of great magnitude, on which learned men have differed, and I have formed no decided opinion. But admitting the right to exist, and to be exercised in the fullest extent, it will deserve further consideration, whether the courts of the United States are bound to enforce against foreigners or citizens of other states, rightfully suing therein, the full effect of a bar of this nature. It is true, that the judiciary act of 24th September, 1789, c. 20, § 34 [1 Stat. 92], has provided, that except where the constitution, treaties or statutes of the United States shall otherwise provide, the laws of the several states shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply. But the laws of the states are to be regarded only as rules of decision, and not as exclusive or peremptory injunctions. If a state were to declare, that no action should lie upon a contract entered into by a citizen thereof with a foreigner or a citizen of another state, under any circumstances whatsoever; or if a state were to declare that interest reserved upon such a contract, if good according to the law of the place of that contract, should be void, it would, I think, be difficult to admit, that such laws would be of paramount authority in the courts of the United States. A more striking case would be a policy of insurance, on which the right to recovery should be perfect by the law of the state where it was made, upon the merits, and yet which by the law of the state where the suit was brought, would be void, or receive a different construction from local ordinances. There must then be some limitation to the operation of this clause, and I apprehend such a limitation must arise whenever the subject matter of the suit is extraterritorial. In controversies between citizens of a state, as to rights derived under that state, and in controversies respecting territorial interests, in which, by the law of nations, the lex rei sitœ governs, there can be little doubt, that the regulations of the statute must apply. But in controversies affecting citizens of other states, and in no degree arising from local regulations, as for instance, foreign contracts of a commercial nature, I think that it can hardly be maintained, that the laws of a state, to which they have no reference, however narrow, injudicious and inconvenient they may be, are to be the exclusive guides for judicial decision. Such a construction would defeat nearly all the objects for which the constitution has provided a national court. Until I should be instructed by the higher court, that I was bound to pronounce in such cases, contrary to the acknowledged principles of national comity, and to acknowledge mere municipal rules as the law of the court, I should have little hesitation in affirming, that a discharge under the insolvent law of Rhode Island was not a discharge of the contract in the present suit; and that it is not a case, in which the law of the state is to be exclusively regarded, as the rule of decision. I have not dwelt upon the inconveniences of a contrary construction, though I hardly know a case, in which the argument ab inconvenienti could more pointedly apply. It would enable the state legislatures by local regulations, to dry up the sources of the federal jurisdiction, and annihilate public as well as private credit; it would set the citizens of the different states in array against each other, and enable a fraudulent debtor to retreat into another state, and thereby a formal surrender of his property and a settled residence, to set at defiance the claims of all his absent and honest creditors. If the cause rested upon this single ground, I should be happy to give the parties an opportunity to settle this important question in the highest tribunal. But it is contended,

that whether the discharge of Monroe, Snow, & Monroe be or be not a complete bar, they and their assignees ought to have been made parties to the present suit. Let us consider this point. It is a general rule, that every person interested in the subject matter should be made a party to the bill. Mitf. Eq. Pl. 145; Coop. Pl. Ch. 33. Therefore, where there is a joint, or joint and several contract, it is laid down that the plaintiff must bring each of the debtors before the court. The reasons assigned for the rule are, that the debtors are entitled to the assistance of each other, in taking the account, and to mutual contribution upon excess of payment beyond their respective shares. But where the reasons cease, the rule ceases also, and therefore, if the demand be admitted, and there can be no effectual contribution from the other parties, it is not allowed to prevail. Madox v. Jackson, 3 Atk. 406. And in cases of joint and several contracts, the rule itself has not stood without contradiction. Collins v. Griffith, 2 P. Wms. 313; s. c., 2 Eq. Cas. Abr. 188, pl. 2. The rule has been relaxed, where the parties before the court were the only solvent persons, and admitted the debt (3 Atk. 406; 2 Dickens, 738); where the absent party was beyond the process of the court (Pre. Ch. 83; Darwent v. Walton, 2 Atk. 510); and where he stood in the situation of a mere surety; (3 Atk. 406); though it might be otherwise, if he were a co-surety (Angerstein v. Clark, 2 Dickens, 738). It is also a general rule, operating by way of exception on the former, that no one need be made a party, against whom, if brought to a hearing, the plaintiff can have no decree. Therefore, on a bill by creditors or purchasers against the assignees of a bankrupt, it seems now settled that the bankrupt himself need not be made a party, though it was formerly otherwise. 2 Vern. 32; 3 P. Wms. 311, note I; Collet v. Wollaston, 3 Brown, Ch. 228.

Let us now apply these rules to the present case. The bill is brought to charge the executors of a deceased partner, having assets, with a joint debt, which at law survived against the firm of Monroe, Snow & Monroe. The ground of equitable interference is, that the surviving partners are certificated insolvents; and whatever may have been the doubts as to this branch of chancery jurisdiction in former times, it has been gradually settled, and is now placed beyond all controversy. Lane v. Williams, 2 Vern. 292; Heath v. Percival, 1 P. Wms. 682; Simpson v. Vaughan, 2 Atk. 31; Bishop v. Church, 2 Ves. Sr. 101, 371; Daniel v. Cross, 3 Ves. 277; Thomas v. Frazer, Id. 399; Burn v. Burn, Id. 573; Stephenson v. Chiswell, Id. 566. In cases where a suit is brought against executors on other grounds, it seems clear, that the rule, that all surviving co-obligors should be parties, in general prevails. 2 Vent. 348; 3 Atk. 406. Shall it be permitted to prevail, where no relief can be given against the co-obligors? Shall a certificated bankrupt, who

is a surviving partner, be joined with the executors, although no remedy can be effectually had in the suit against him? No authority has been adduced exactly in point. The case of Ashurst v. Eyre, 2 Atk. 51, was supposed at first to support the affirmative; but it is very clear, upon a further examination of that case, as corrected in 3 Atk. 341, that no such question could have occurred, as the parties appear all to have been solvent. There is obviously a mistake in what is imputed to Lord Hardwicke in speaking of this case in 3 Atk. 406. In no case, where relief has been sought against the representatives of a deceased partner, on the ground of bankruptcy of the surviving partner, have I been able to discover, that the bankrupt himself or his assignees have been made parties. On the contrary, if the reports can be relied on as evidence, the bill has been uniformly against the representatives alone. This very silence in cases so strenuously and ably argued, affords a strong presumption of the practice and the law of the court. There seems, indeed, good reason why they should not be made parties, because the bankrupt may plead his certificate ir bar without further answer, and the assignees are bound to apply the property in their hands, according to the course of distribution prescribed by the law and the court, among the creditors who prove their debts under the commission. They have, therefore, no interest in the case stated in the bill, and do not fall within the principle of the rule as to parties. If, indeed, it appeared that there was a surplus in the hands of the assignees beyond the sum necessary for payment of all other debts, perhaps equity would interpose, and in some shape require an application to that fund in aid of the executors. As to the objection, that the executors in this way would be deprived of all assistance in taking the account, and of contribution, it may be answered that they may file a cross bill, and avail themselves of all legal evidence in their defence, and the right of contribution does not concern the plaintiff. It is res inter alios acta. I am therefore well satisfied, upon the reason of the thing and the practice, that if the certificate of Monroe, Snow & Monroe had been a valid discharge, neither they nor their assignees need have been made parties. But it is not necessary absolutely to decide this point, because there is another view of the subject, which is fatal to the bill in its present shape. In order to maintain the jurisdiction of this court, it is necessary that the bill should charge an absolute discharge or insolvency of Monroe, Snow & Monroe. I am of opinion that no such discharge is shown; and in the bill, there is no allegation that they were at the filing of the bill actually insolvent. Nothing can be more clear, than that if they were liable at law, and able to pay, the present bill could not be sustained. It is perfectly well settled, that equity will not lend its aid to reach assets in the hands of executors, when a com-

plete, adequate, and effectual remedy exists at law against surviving solvent partners. Hoare v. Contencin, 1 Brown, Ch. 27. The bill therefore does not contain an allegation, which is now material, and the answer denies the present insolvency. Whether, if the bill did charge such insolvency, and it were admitted or proved, it would become necessary and proper to make the insolvents or their assignees parties to the suit, I give no opinion. If the parties raise the question, it will deserve and receive the deliberate consideration of the court.

After the judge had intimated his opinion, the plaintiff's counsel moved for leave to amend their bill, and also to make new parties, if it should be deemed advisable, and the cause was continued for this purpose to the next term.

Leave to amend.

[See Case No. 16,872.]

Affirmed in principle in supreme court (9 Cranch [13 U. S.] 158), but sent back on another point. Harrison v. Story, 5 Cranch [9 U. S.] 289; Le Roy v. Crowninshield [Case No. 8,-269]; 2 Kent, Comm. (5th Ed.) 394, note; Harvey v. Richards [Case No. 6,184]; 2 Kent, Comm. 458–460, and the very learned notes: Story, Confl. Laws, §§ 281, 335, note 4; Id. § 558, note 2. See Babcock v. Weston [Case No. 703].