Allen and Apperson *v.* Keith and Vaiden.

---

ALLEN AND APPERSON *v.* KEITH AND VAIDEN, Admin'rs, &c.

The words of the statute in relation to claims against estates of decedents, are: "that if any creditor shall not make out his claim with the commissioners, within the time of the commission or before referees, or at common law in the manner this act provides, he shall be forever barred of his debt or demand, unless such creditor shall find other estate of the deceased, not inventoried or accounted for by the executor or administrator, before distribution." Hutch. Co. 668.

This must be treated as a statute of limitations, not restricted in its operation to any particular class of persons, but only to the estate inventoried by an administrator before distribution. But it was not intended that the words forever barred, should have any operation, or constitute a bar to proceedings to subject any estate not accounted for by an administrator or executor.

In such cases the party must pursue his remedy in the same manner as if there had been no declaration of insolvency.

The jurisdiction of the probate court over the estate thus discovered, is exactly such as it was before the declaration of insolvency. It has no power to

decree payment of accounts, or to do any thing more than to give it the shape of a legal voucher for the administrators.

In error from the probate court of Panola county; Hon. J. T. M. Burbridge, judge of the probate court.

William Jolly died in Panola county, in the year 1847, and Keith and Vaiden took out letters of administration on his estate. In the year 1848, the estate was suggested insolvent at the April term of the court, and commissioners of insolvency appointed, who, at the September term, 1849, of the probate court, made their report upon the claims that had been presented against the estate. Allen and Apperson failed to lay their claim before the commissioners within the time prescribed by law, but filed their petition with their claim probated, alleging that they had no actual notice of the insolvency of the estate, and were ignorant of the same, until the time limited by the court for filing claims with the commissioners had expired, which was twelve months, and the petitioners were now residents. The petitioners also allege that the estate has turned out to be entirely solvent.

The claim of petitioners was not allowed by the commissioners, and they prayed a writ of error to this court.

*Calvin F. Vance* for appellants.

The administrators admitted the justness of the claim of appellants, and would not consent to a suit at law. They are prohibited from suing at law unless a case is made up by agreement of the administrators, or unless they contest the claim. We have numerous decisions of our high court, where applications analogous to this have been made to probate courts by general creditors. For the case of *Freeman* v. *Rhodes*, 3 S. & M. 329, shows that the probate court is the proper tribunal for the application of a general creditor, when the claim is of such a nature or character as that the administrator would be bound to pay it; or when the estate has been suggested insolvent; or when there is an impediment to a recovery of the claim by suit at law. Either one of these contingencies would justify the application to a probate court for payment, by a general credi-

tor. And this case completely fulfils all the contingencies. This estate has been suggested insolvent, and there is the impediment of the statutory enactment forbidding suits.

The case of *Emanuel et al.* v. *Norcum and Barwell, Administrators,* 7 How. 150, is almost directly in point. In that case the appellants filed their petition in the probate court, praying the allowance of an open account against the estate of Alexander McNeill, deceased, and that the defendants, as administrators, might be compelled by decree to pay the same. The account was alleged to be for articles necessary to the plantation, being medicines, oils, &c., furnished for the use of the plantation after the decedent's death, which the executor had determined to carry on. The account was rejected by the probate court, and the high court reversed the decree, remanded the case, declaring that the executor should be decreed to pay the same, thus fully recognizing the jurisdiction of the probate court, and the propriety of the remedy.

We refer the court to the case of *Carmichael et al.* v. *Browder,* 3 How. 252, where Chief-Justice Sharkey, in delivering the opinion of the court, says that "whatever is a matter testamentary, or of administration, falls under the cognizance of the court of probates; if the remedy can be had under the appropriate powers of the probate court, it should there be pursued." And in the same decision he says again, "that there are but few, if any cases of administration in which the powers of the probate court are not altogether adequate to the necessary relief. Indeed, its powers may be said to be coextensive with those of a court of equity; for if necessary parties, they may proceed by bill and answer, and the court may decree as the justice of the case may require." The same principle is asserted in the case of *Carter* v. *Judge of Probate,* 2 S. & M. 42.

It may be proper to consider the application of the statute (Hutch. Code, 668, § 103) under which it is alleged this claim is barred, and determine its meaning. Chief-Justice Sharkey says, "in construing a statute, the object is to get at the design, spirit, meaning, and scope of the law." 1 S. & M. 70. A statute must be construed according to the intent, even if it is contrary to the letter of the statute. 1 How. 183; 12 S. & M. 456; 1 Kent, Com. 462.

It was evidently the intention of the legislature in enacting the above statute, to make a just, equal, and impartial distribution of the assets of the estates of decedents among creditors. To accomplish this object, they provided for the appointment of commissioners where an estate was suggested insolvent, to receive and adjudicate claims against it, provided they are presented within the time limited by law. The meaning of this is, that claims are barred so far as concerns insolvent estates, where there has been a failure to file them within the time with the commissioners. But it was not intended to apply to estates not insolvent, as has been shown in this case that the estate is not insolvent, but able to pay all claims against it. This is the only reasonable and fair construction of the statute. To give it any other construction would make it a statute to bar claims, instead of one to allow and adjudicate.

*Glenn* on the same side.

*Watson* and *Craft* for appellees.

That the said petition was properly dismissed cannot be doubted. The probate court can certainly afford no relief to a creditor but in the manner pointed out by law, and the law gives no countenance to such a proceeding as the petition of plaintiffs in error. 11 S. & M. 344; 13 Ib. 311.

Moreover the account filed by petitioners was barred by the statute of limitations. The account was contracted in September and October, 1846. May 1, 1847, petitioners charged three months interest upon it, which thus, according to their own showing, made it due January the 1st, 1847. From January 1, 1847, to December 27, 1850, the time when said petition was filed, was a period of three years, eleven months, and twenty-seven days, and the lapse of three years and nine months from January 1, 1847, without the commencement of any suit or action upon said claim, barred it. Hutch. Code, 831, § 10. The decedent, Jolly, died in the latter part of the year 1847, and this fact is averred in the petition; consequently the exception in the statute of limitations, " that in case of the death of the creditor or debtor before the expiration of the said term of

three years, the further term of one year from the death of such creditor or debtor shall be allowed for the commencement of any such suit or action," has no application to this case. This saving only embraces cases in which the cause of action has existed two years or more at the death of the creditor or debtor. The design of this saving was to extend the right of action for one year after the death of the creditor or debtor, when it existed at the time of such death. But where, without the benefit of this saving, the cause of action under the general law would exist more than one year after the death of the creditor or debtor, the saving has no application.

Mr. Justice FISHER delivered the opinion of the court.

This case presents but a single point for our consideration, and that is, whether the petitioners are entitled to receive payment of their account out of the surplus of the estate, remaining after satisfying the claims allowed by the commissioner of insolvency.

The estate of Jolly was declared insolvent at the April term, 1848, of the probate court of Panola county. The commissioner's report was confirmed at the September term, 1849, of said court. The appellants omitted to lay their claim before the commissioner within the time prescribed by law, or to have it established in any other mode provided for the proof of debts against an insolvent estate.

They now seek payment, and invoke the action of the probate court for that purpose, on the ground that it appears by the returns of the administrators into court, since the confirmation of the commissioner's report, that the estate is not in fact insolvent, but that, after satisfying the debts embraced in the report and the legal charges of administration, there will still be a surplus of several thousand dollars; out of which it is insisted that the appellants' account ought to be paid, inasmuch as the law places the demands of creditors upon a higher footing than the rights of the distributees of the estate.

The correctness of this position may be admitted to the fullest extent, and yet not be applicable to the case under consideration. The first point to be settled is, whether the appellants

are, in a legal sense, creditors, so far as the estate is concerned, out of which they seek payment of their account; and we must look to the rules of law to guide us in determining this fact, before we shall find it necessary to make an application of the rule, no doubt correctly stated by counsel. While the commission of insolvency was open, the appellants may be said, in one sense, to have been creditors of the estate; for they had a clear right, within a certain time, to prove their account, either before the commissioner, or in some one of the modes prescribed by the statute. But this they omitted to do; and the question therefore arises, whether they are now creditors of the estate. The law itself has established the mode and the time within which the fact, whether a person is or is not a creditor of an estate which has been declared insolvent, must be established. Those who fail to comply with the requisitions of the law in this respect, cease, after the lapse of a certain time, to be creditors, entitled to satisfaction of their debts out of the estate which has been accounted for, to the court, by the administrators.

To sustain this view of the subject, it is only necessary to quote the words of the statute, which are as follows, to wit: " And if any creditor shall not make out his claim with the commissioners within the time of their commission, or before referees, or at common law, in the manner this act provides, he shall be forever barred of his debt or demand, unless such creditor shall find other estate of the deceased not inventoried or accounted for by the executor or administrator before distribution." Hutch. Code, 668. It would seem to be almost impossible not to understand what the legislature intended by the use of language so plain and unequivocal. Indeed, it is not pretended that the words have either an ambiguous or doubtful meaning; but that the court, in the application of the statute, notwithstanding its unequivocal language, must look to the subject of legislation, by which, it is said, it will readily appear, that the statute was intended to be operative only in the event of the estate's ultimate insolvency. We cannot agree with the counsel in their construction, even if we depart from the words of the law, and look to the object intended to be accomplished by the legislature.

We admit, that the subject of legislation was insolvent estates, and that it would be proper, if it were necessary to resort to the rules of construction to arrive at the true meaning of the lawmaker, to ascertain, if possible, the object intended to be accomplished by the law; and for this purpose, to take into consideration the whole law on the particular subject. This may safely be done on the present occasion, and so far from relieving the appellants from the operation of the statute, it will only be made the more manifest, that the legislature intended just what the words themselves, taken according to their ordinary signification, mean.

In the first place, the statute itself has prescribed the mode in which, and the tribunals before which, debts must be proved against insolvent estates. This tribunal, while it exists, is clothed with all necessary power for this purpose. The law, however, for wise purposes, has limited the time within which it shall act. Having been created for a special purpose, and for a limited time, its authority necessarily ceases when the time expires. Those who claim to be creditors of the estate must, while this tribunal is in existence, have the fact adjudicated and settled, whether they are, in truth, such creditors.

In the second place, the court can only know those as creditors of the estate whose claims have been established in the manner prescribed by the statute. It is only to such that the estate can be distributed under the order of the court. No others can be recognized by either the court in decreeing, or the administrators in making, payment. This order distributing the estate is the final order of the court, at least so far as creditors are concerned. The action of the court could only afterwards be invoked to enforce its decree, by which the doubtful question between creditors and distributees was settled.

The final order, in such case, operates as the final order settling an estate in all other cases operates. It ascertains the fact, how much of the estate has been or will be consumed in paying its debts and other legal charges, and how much remains to be distributed to the legatees or heirs at law.

And, in the third place, it is the policy of the law, and consistent with natural justice and equity, that estates should be

Allen and Apperson *v.* Keith and Vaiden.

settled and distributed within a limited time, and the rights of creditors duly ascertained. It is true that the creditor is entitled to be first satisfied. But this is no reason why he should not be diligent in establishing his debt in the manner, and in the time, the law prescribes. His debt is but a charge or incumbrance upon the estate, and it is not only law, but a law consistent with justice and sound policy, that he should be limited as to the time of proving his debt; otherwise the distributee could never know the extent of his interest in the estate, or when he would be rid of the incumbrance.

Under any view, therefore, which we can take of this statute, it must be treated as a statute of limitations; not restricted in its operation as to any particular class of persons, but only as to the estate inventoried by the administrators before distribution.

The words "forever barred" must be taken according to their ordinary import, except so far as the statute itself has qualified their meaning. It was not intended that they should have any operation, or constitute a bar to proceedings to subject any estate not accounted for by the administrators. As to such estate, the appellants must pursue their remedy in the same manner as if there had been no declaration of insolvency. The administrators may, if they are so disposed, make voluntary payment of the account, and look to the estate discovered by the creditors for reimbursement.

The jurisdiction of the probate court over the estate thus discovered is exactly such as it was before the declaration of insolvency. It, however, has no power to decree payment of the account, or to do more in regard to it than to give it the shape of a legal voucher for the administrators; but this would not be decreeing, but at most only advising or recommending payment.

Decree affirmed.