HARTMAN *v.* FISHBECK, Adm'r, etc.

*(Circuit Court, E. D. Wisconsin.   October 5, 1883.)*

1. ESTATES OF DECEASED PERSONS — JURISDICTION OF COUNTY COURTS — NON-RESIDENT CREDITORS.

Notwithstanding the statutes of a state provide that the county courts of such state shall have jurisdiction over the estates of deceased persons in that state, and limit the time within which claims against such estates must be

filed, and actions brought to recover thereon by creditors resident of that state, a citizen of another state, being a creditor of the testator or intestate, cannot be acted upon by any proceedings under that statute, unless he shall have voluntarily made himself a party to them, so as to impair his constitutional and legal rights to sue the executor or administrator in the circuit court of the United States. *Suydam* v. *Broadnax*, 14 Pet. 67.

2. SAME—JURISDICTION OF FEDERAL COURTS.

The circuit court for any district embracing a particular state will have jurisdiction of an equity proceeding against an administrator, if, according to the received principles of equity, a case for equitable relief is stated, even though by a peculiar structure of the state probate system such a proceeding could not be maintained in any court of the state.

3. SAME—ACTION BY NON-RESIDENT CREDITOR.

The circuit court of the United States has jurisdiction of an action by a non-resident creditor against a resident executor or administrator upon a debt of his decedent.

4. SAME—LIMITATIONS.

The limitation of time within which by the statute claims must be presented for allowance in the probate court, is inseparable from the peculiar procedure prescribed; it is a part of that procedure, and so not like a general statute of limitations, and can only be applied to parties who are bound by such special mode of procedure.

At Law.

*Davis, Reiss & Shepard,* for plaintiff.

*Emil Wallber,* for defendant.

DYER, J. This is a common-law action, upon a money demand, brought by the plaintiff against the administrator of Rudolph Nern, deceased, to recover from the defendant, as such administrator, a certain sum alleged to be due to the plaintiff on account of loans of money made to the intestate in 1881. The plaintiff is, and was at the time the alleged indebtedness was incurred, a citizen of Missouri, and the inference is, from the averments of the complaint, that the loans were made in that state.

In the state of Wisconsin, of which the deceased was a citizen, and where his estate is situated, the county courts have exclusive jurisdiction of the settlement of estates of deceased persons, and by statute it is made the duty of any such court, on granting letters testamentary or of administration, to receive, examine, and adjust the claims and demands of all persons against the deceased, or to appoint commissioners for that purpose. It is further provided by the state statute that the county court shall appoint convenient times and places when and where the court or commissioners will receive, examine, and adjust such claims, and shall give notice of the times and places fixed for that purpose, by publication or otherwise. The statute, in other and further provisions, prescribes a course of procedure in the presentation, hearing, and disposition of claims and demands, and then declares that "every person having a claim against a deceased person, proper to be allowed by the court or commissioners, who shall not, after notice given as required, * * * exhibit his claim to the court or commissioners within the time limited for that purpose, shall be forever barred from recovering such demand, or

from setting off the same in any action whatever." Finally, the statute forbids the commencement of any action against an executor or administrator, excepting actions for the recovery of specific real or personal property, or actions to establish, enforce, or foreclose a lien or right of lien on real or personal property.

One of the defenses interposed by the defendant to the present action is that, at the time of the death of the intestate, he was an inhabitant of this state; that the defendant was appointed administrator of the estate of the deceased by the county court of Milwaukee county, sitting in probate; that said court, by order duly entered, directed that all claims and demands against the estate be received, examined, and adjusted by the court, and limited the time within which claims of creditors should be presented; that notice of such time and of the place where claims should be presented was duly given, as required by statute; that the plaintiff knew of the death of the intestate, and of the action of the court in the premises, but that he did not present his claim for allowance within the time limited for the purpose, which time expired before the commencement of this suit; and that, therefore, he is barred from maintaining the action, or from recovering the amount of his demand in any action whatever.

This defense is demurred to, and the question to be determined is, do the facts therein stated constitute any defense to the action? I am clearly of the opinion that they do not, and that the demurrer should be sustained. Undoubtedly, in the absence of the statute referred to, the usual common-law remedy would be open to the plaintiff and could be enforced against the administrator. This was conceded on the argument. To maintain the defendant's contention it must, therefore, be made to appear that the state statute operates as an abrogation of that remedy, even in the case of a citizen of another state suing in this court. Such effect cannot be given to the statute. The special course of procedure prescribed by the statute is, of course, effective to bind all citizens of the state, and operates to protect the administrator or executor against suit by such persons. Such were the cases in judgment cited on the argument. *Lightfoot* v. *Cole*, 1 Wis. 36; *Lannon* v. *Hackett*, 49 Wis. 261; [S. C. 5 N. W. Rep. 574;] and *Carpenter* v. *Murphy*, Wis. Leg. N. June 9 and 11, 1883; [S. C. 15 N. W. Rep. 798.] It is also probably true that if a citizen of another state, in a case like this, invokes the aid of the state court in the enforcement of a remedy, he will be remitted to the court having special and exclusive jurisdiction of the subject-matter, and be held subject to the provisions of the statute referred to. *Commercial Bank of Kentucky* v. *Slater*, 21 Minn. 174.

But it is the constitutional right of a citizen of another state, where his demand is adequate in amount, and other prerequisites to jurisdiction exist, to sue in this court, and that right cannot be affected by state statute. In other words, the law of a state limiting the

remedies of its citizens in its own courts cannot be applied to prevent the citizens of other states from suing, in the courts of the United States in that state, for the recovery of any money or property there to which they may be legally or equitably entitled. *Union Bank of Tennessee* v. *Jolly's Adm'rs,* 18 How. 503. It is to be observed that the only question here is as to the right of the plaintiff to bring this suit, and to prosecute it to judgment in this court; and there is not involved any question of the ultimate course of procedure essential to enforcement of the judgment against the estate, if a judgment shall be recovered. The statute is one which, by the exemption it gives to executors and administrators from suit, would seem to imply a denial to creditors of the intestate of the right to sue without regard to the state of which the creditor may be a citizen, or where the debt was contracted. *Suydam* v. *Broadnax,* 14 Pet. 67. But the judiciary act of the United States provides that the circuit court shall have original jurisdiction of all suits of a civil nature, at common law or in equity, where the matter in dispute, exclusive of costs, exceeds the sum or value of $500, and the suit is between a citizen of the state where it is brought and a citizen of another state; and, as was said by the court in the case last cited, it was certainly intended by this statute "to give to suitors having a right to sue in the circuit court, remedies co-extensive with these rights. These remedies would not be so, if any proceedings under an act of a state legislature, to which a plaintiff was not a party, exempting a person of such state from suit, could be pleaded to abate a suit in the circuit court."

The proposition of counsel is correct, that, in the absence of legislation upon the subject by congress, the courts of the United States recognize the statutes of limitation of the several states, and give them the same construction and effect as are given them by the local tribunals. *McCluny* v. *Silliman,* 3 Pet. 270; *Ross* v. *Duval,* 13 Pet. 45; *Leffingwell* v. *Warren,* 2 Black, 599. But it can hardly be contended, I think, that the statute in question creates a limitation to which the rule or principle invoked is applicable. It is not like the general statute of limitations of the state, which, in cases of contract, limits the time for the commencement of an action to six years. Here the statute prescribes a certain course of procedure in connection with the settlement of estates, to be pursued by creditors in the enforcement of their claims. It provides a certain remedy, which is made exclusive in the state. The limitation of time within which, by the statute, claims must be presented for allowance in the probate court, is inseparable from the peculiar procedure prescribed. It is part of that procedure, and so not like a general statute of limitations; and as the plaintiff here was not bound to pursue that remedy, but being a citizen of another state can sue in the federal court, he is not affected by a limitation which cannot be separated from the special statutory mode of procedure.

The conclusions arrived at are supported by adjudicated cases analogous in principle.

In *Ry. Co.* v. *Whitton*, 13 Wall. 285, the right of action existed only by virtue of a state statute; and, although the statute required the action to be brought in the state court, the supreme court held that this did not prevent a citizen of another state from maintaining an action based upon the statute in the federal court. In the opinion it is said:

"In all cases where a general right is thus conferred, 'it can be enforced in any federal court having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such federal court by any provision of state legislation that it shall only be enforced in a state court."

In *Suydam* v. *Broadnax, supra,* it was held that a statute of a state, barring all actions at law against the executors and administrators of estates judicially declared insolvent, cannot be pleaded as a bar to an action, by a citizen of another state, in a circuit court of the United States. Here was a state statute under which the insolvency of estates might be ascertained and adjudicated by the orphans' court. After such ascertainment of insolvency, the statute provided for the appointment of commissioners for the allowance or disallowance of claims, and it declared that all claims of creditors, not put before the commissioners within the time limited, or otherwise allowed, should be forever barred, and that no suit should be commenced or sustained, against any executor or administrator, except in certain cases, of which the case decided was not one. It is true, the statute expressly excepted from the bar therein declared, debts contracted out of the state, but the court sustained the plaintiff's right to maintain his suit in the federal court, unaffected by the statute, on the broad ground of constitutional and legal right. And, in addition to what has been already quoted from the opinion in the case, the court said:

"Though this is a statute intended to act upon the distribution of insolvent estates, and not a statute of bankruptcy, whatever exemption it may give from suit to an executor or administrator of an insolvent estate against the citizens of Alabama, a citizen of another state, being a creditor of the testator or intestate, *cannot be acted upon by any proceedings under the statute,* unless he shall have voluntarily made himself a party in them, so as to impair his constitutional and legal right to sue an executor or administrator in the circuit court of the United States."

These observations seem directly pertinent to the case at bar.

This case was followed by the similar case of the *Union Bank of Tennessee* v. *Jolly's Adm'rs, supra;* and in *Payne* v. *Hook,* 7 Wall. 425, it was held that the equity jurisdiction and remedies conferred by the constitution and statutes of the United States cannot be limited or restrained by state legislation, and are uniform throughout the different states of the Union; hence the circuit court for any district embracing a particular state will have jurisdiction of an equity proceeding against an administrator, (if, according to the re-

·ceived principles of equity, a case for equitable relief is stated,) notwithstanding that, by a peculiar structure of the state probate system, such a proceeding could not be maintained in any court of the state.

Demurred sustained.

---

Statutes similar to the Wisconsin statute, which was pleaded in bar of the action in the principal case, exist in most, if not all, of the states; the difference in these statutes being chiefly the length of time limited within which to bar the claim of a creditor of a decedent.

Statutes of limitation may be of three kinds: they may be such as are passed merely to apply to the jurisdiction of a court, being enacted for the purpose of prohibiting certain courts from taking cognizance of actions that are brought after a certain time; on the other hand, they may be such as declare in terms that the *contract* shall be taken to be utterly extinguished if not sued upon within a specified time; again, they may be of an intermediate character, and declare that no *action* can be brought, after a certain time specified, upon a contract made within the state. The first and third of these are directory, and are held to be in regulation of the proceedings in the courts affected thereby.[1] But if a statute be general, without a direct application to foreign contracts, it seems proper to adopt the rule that its construction shall not be extended to such contracts.[2] In this case an action was brought in the United States circuit court for the district of Rhode Island against a citizen of Rhode Island, upon a contract made in a foreign country with a citizen of that country. The defendant had been discharged from his debts, under the insolvent laws of Rhode Island, and pleaded that discharge in bar of the action. It was held that the Rhode Island statute, while it of necessity controlled all the citizens of Rhode Island, could not have any extraterritorial effect, and therefore the plaintiff could not be barred by it, in the United States court. This is the position taken by DYER, J., in the principal case. Principle sustained.[3]

The contrary seems to be the ruling in *Pratt* v. *Northam*,[4] it being there held that the statute of limitations of Rhode Island, of suits against executors or administrators, is a good bar both at law and in equity.

By the thirty-fourth section of the act of 1789 it was provided that the laws of the several states, except when the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, where they apply. Following the provisions of this statute, the courts of the United States will recognize such laws as binding upon the courts in all matters touching any local statute or usage, or affecting the title to land, or any principle which has become a rule of property.[5]

But no state law can, *proprio vigore*, affect the process of the courts of the United States.[6]

In most cases which are brought before the courts of the United States the court is called upon to enforce the laws of the state. It would, therefore, be strange if the judicial expositions of those laws given by the highest court in such state should not be followed.[7] The peace of society and security of titles

---

[1] Le Roy v. Crowninsheild, 2 Mason, 151, 158.
[2] Van Reimsdyk v. Kane, 1 Gall. 371.
[3] Hyde v. Stone, 20 How. 170; Golden v. Prince, 3 Wash. 313; Catherwood v. Gapete, 2 Curt. 94; Green's Adm'x v. Creighton, 23 How. 90; Boyle v. Zacharie, 6 Pet. 658; Shelby v. Bacon, 10 How. 70; Riggs v. Johnson Co. 6 Wall. 187; and the cases cited in the principal case.
[4] 5 Mason, 95.

[5] Boyce v. Tabb, 18 Wall. 546.
[6] Catherwood v. Gapete, 2 Curt. 94; Keary v. Farmers' & Merch. Bank, 16 Pet. 89; Dromgoole v. Farmers' & Merch. Bank, 2 How. 241; Bell v. Davidson, 3 Wash. 329; Craig v. Brown, Id. 503; New England Screw Co. v. Bliven, 3 Blatchf. 240; U. S. v. Wonson, 1 Gall. 5, 18; Babcock v. Weston, Id. 168.
[7] Green v. Neal, 6 Pet. 291.

require that the courts of the United States shall conform to such construction.[1]

It is, accordingly, generally held by the United States courts that the decisions of the highest court of a state are obligatory upon the United States courts,[2] especially if such decisions have been uniform;[3] but not in questions of general commercial law;[4] and where the question involved in construction of the state statute practically affects the remedies of creditors, which are protected by the court, the United States court will exercise its own judgment on the meaning of the statute, irrespective of the decisions of the state court, and, if it deems those decisions wrong, will not follow them;[5] but where the decision of the highest court of the state construing a statute has been approved by the United States court, and afterwards the state court changes its decision, the United States court will not be bound to follow the later decision of the state court;[6] but the construction given by the supreme court of the state to a statute of limitation will be followed by the supreme court of the United States in a case decided the other way in the circuit court before the decision in the state court;[7] and such decision as to the statute of limitations will be binding on the United States courts, whatever they may think of its soundness on general principles,[8] but they will not follow decisions of the state courts, or statutes of the state, in the matter of regulations or restrictions placed upon courts of the state. Such provisions are exclusively addressed to state tribunals, and have no efficacy in courts of the United States, unless adopted by them.[9]

The courts of the United States have been quite jealous of the constitutional provision that entitles a citizen of one state to bring suit against a citizen of another in the circuit court of the United States.

Thus, in *Hyde* v. *Stone*,[10] it is asserted that the courts of the United States are bound to proceed to judgment and to afford redress to all suitors who are before them in any case which comes properly within their jurisdiction, and that they cannot abdicate that authority in favor of any other jurisdiction; and further, that this constitutional right cannot be impaired by any state legislation which prescribes the mode of redress in its own courts. This same doctrine is held in *Union Bank of Tennessee* v. *Jolly's Adm'r*;[11] *Ry. Co.* v. *Whitton*;[12] and *Payne* v. *Hook*.[13]

In *Union Bank of Tennessee* v. *Jolly's Adm'r*,[14] the United States court maintained that it could not be ousted of its jurisdiction by the statute of Mississippi, although it had been decided by the highest authority in Mississippi[15] that creditors whose claims have not been presented to the commissioners (provided by statute to adjust claims against insolvent estates) are forever barred, even when the estate proves not to be insolvent; and also in *Trezevant* v. *Tindall*[16] that the creditor *must* present his claim to the commissioners even where he had a suit pending against the administrator

1 Ross v. M'Lung, 6 Pet. 293.

2 Bailey v. Magwire, 22 Wall. 215; Warren v. Leffingwell, 2 Bl*e*ck. 599; Gut v State, 9 Wall. 35; Fairfield v. County of Gallatin, 100 U. S. 47; Elmendorf v. Taylor, 10 Wheat. 152; Jackson v. Chew, 12 Wheat. 153; U. S. v. Morrison, 4 Pet. 124; Henderson v. Griffin, 5 Pet. 151; Hinde v. Vattier, Id 398.

3 Townsend v. Todd, 91 U. S. 452; Allen v. Massey, 17 Wall. 354; Swift v. Tyson, 16 Pet. 1; Chicago City v. Robbins, 2 Black, 428; Post v. Sup'rs, 105 U. S. 667.

4 Railroad Co. v. Nat. Bank, 102 U. S. 14; Swift v. Tyson, 16 Pet. 1; Oates v. Nat. Bank, 100 U. S. 239; Watson v. Tarpley, 18 How. 517.

5 Butz v. City of Muscatine, 8 Wall. 575.

6 Gelpcke v. Dubuque. 1 Wall. 175.

7 Moores v. Nat. Bank, 104 U. S. 625.

8 Tioga R. R. v. Blossburg & C. R. R. 20 Wall. 137.

9 Boyle v. Zacharie, 6 Pet. 658; Shelby v. Bacon. 10 How. 70; Riggs v. Johnson Co. 6 Wall. 187; Bell v. Davidson, 3 Wash. 329.

10 Ubi supra.

11 18 How. 503.

12 13 Wall. 270.

13 7 Wall. 425.

14 Ubi supra.

15 Allen v. Keith, 26 Miss. 232; Anderson v. Tindall, Id. 332.

16 13 Smedes & M. 311.

In *Railway Co.* v. *Whitton*,[1] the peculiar statute of the state was urged as a reason why no jurisdiction could be maintained by the United States court, but it was said by FIELD, J.:[2] "The statutes of nearly every state provide for the institution of numerous suits, such as for partition, foreclosure and the recovery of real property, in particular courts and in the counties where the land is situated, yet it has never been pretended that limitations of this character could affect in any respect the jurisdiction of the federal court over such suits, where the citizenship of one of the parties was otherwise sufficient."

In *Payne* v. *Hook*,[3] it being urged that Payne was bound to proceed in the probate court of Calloway county, Missouri, on account of the peculiar provisions of the statute of Missouri, DAVIS, J., said: "If this position could be maintained, an important part of the jurisdiction conferred upon the federal courts by the constitution and laws of congress would be abrogated. * * * Of what value would that right" (the right of the citizen of one state to sue the citizen of another state in the United States court) "be, if the court in which the suit is instituted could not proceed to judgment and afford a suitable means of redress? The right would be worth nothing to the party entitled to its enjoyment, as it could not produce any beneficial result."

The provision of the Missouri statute, which had not been complied with on the part of Payne, had been adjudicated upon by the supreme court of Missouri, and it had been there determined that the limitation applies to *all* courts and supersedes the general statute of limitations.[4]

The equity jurisdiction of the courts of the United States is to be exercised uniformly throughout the United States, and will not suffer any modification from the legislation of the states, or the practice of their courts;[5] and it may be exercised, notwithstanding the local law of the state where the suit is brought allows the creditor to proceed by a peculiar process at law;[6] and if the law of the state has provided relief at law in the state courts which equity alone could previously give, this does not affect the equitable jurisdiction of the courts of the United States:[7] nor can they be concluded in a matter of general equity jurisdiction by a decision of the state courts;[8] and this equitable jurisdiction will be exercised over executors and administrators, and cannot be barred by subsequent proceedings in insolvency in the probate court of the state.[9]

In the principal case Judge DYER says: "There is not involved any question of the ultimate course of procedure essential to enforcement of the judgment against the estate, if a judgment shall be recovered." He thereby intimates that questions of great seriousness may arise, as to the manner in which the judgment of the court can be enforced, in the face of the limitation established by the Wisconsin statute. This is really the important question; for how can there be "a suitable measure of redress" unless the United States court may proceed to the enforcement of its judgment? Although the plaintiff had enjoyed his "constitutional right to sue in this court," yet would not that "right be worth nothing to the party entitled to its enjoyment" if the result of the suit could not be enforced by due process? Yet in *Williams* v. *Benedict*[10] it was expressly held that the plaintiff in the United States court could not take any advantage from his action in that court, but must come in with other creditors of the decedent, precisely as if he had proceeded under the Mississippi statute in the first instance. In this case it is said by GRIER, J.:[11] "The jurisdiction of the probate court has attached to the assets; they are *in*

1 Ubi supra.
2 13 Wall. 286.
3 Ubi supra.
4 Montelius v. Sarpy, 11 Mo. 237.
5 Livingston v. Story, 9 Pet. 632; Cropper v. Cob~ l, 2 Curt. 465.

6 U. S. v. Howland, 4 Wheat. 108.
7 Cropper v. Coburn, ubi supra.
8 Flagg v. Mann, 2 Sumn. 487.
9 Green's Adm'x v. Creighton, 23 How. 90.
10 8 How. 07
11 Page 112.

*gremio legis.* And if the marshal were permitted to seize them under execution, it would not only cause manifest injustice to be done to the rights of others, but be the occasion of an unpleasant conflict between courts of separate and independent jurisdiction." The same principle was reiterated in *Yonley* v. *Lavender,*[1] in which the opinion was pronounced by DAVIS, J., who, notwithstanding what he said in *Payne* v. *Hook,* held that where the statute of a state placed the whole estate, real and personal, of a decedent within the custody of the probate court, so that the assets might be fairly and equally distributed among the creditors, without distinction as to whether they were resident or non-resident, a non-resident creditor might get judgment in the federal court against the resident executor or administrator and come in on the estate, according to the law of the state, for such payment as that law, marshaling the rights of creditors, awarded to his class. But he denied to such creditor any right, because he had obtained judgment in the federal court, to issue execution and take precedence of other creditors who had no right to sue in the federal court, and held that if he did issue execution and sell land, such sale was void.

The class of statutes under discussion being limitations of the first class, heretofore mentioned, and therefore considered as directory, and in nowise extinguishing the contract, and, by numerous decisions, the courts of the United States having held that, while recognizing and being bound by the statutes of limitation of the second class in the various states, they were in no manner concluded by statutes of this kind, the sustaining of the demurrer in the principal case was entirely proper. But, in view of the inability of the United States courts to award execution on judgments of this kind, it may be fair to ask whether the event of such cases would " produce any beneficial result."                                 WILLIAM TALCOTT.

*New York City, November* 8, 1883.

[1] 21 Wall. 276.