*283
 
 Mr. Justice FIELD,
 

 having stated the case, delivered the
 

 opinion of the court as follows:
 

 The jurisdiction of the action by the Federal court is denied on three grounds: the character of the parties as supposed citizens of the same State; the limitation to the State court of the remedy given by the statute of Wisconsin; and the alleged invalidity of the act of Congress of March 2d, 1867, under which the removal from the State court was made.
 

 First, as to the character of the parties.
 
 The plaintiff is a citizen of the State of Illinois and the defendant is a corporation created under the law's of Wisconsin. Although a corporation, being an artificial body created by legislative power is not a citizen within several provisions of the Constitution ; yet it has been held, and that must now be regarded as settled law, that, where rights of action are to be enforced, it will be considered as a citizen of the State where it was created, within the clause extending the judicial power of the United States to controversies between citizens of different States.
 
 *
 
 The defendant, therefore, must be regarded for the purposes of this action as a citizen of Wisconsin. But it is said, and here the objection to the jurisdiction ai'ises, that the defendant is also a corporation under the laws of Illinois, and, therefore, is also a citizen of the same State with the plaintiff. The answer to this position is obvious. In Wisconsin the laws of Illinois have no operation. The defendant is a corporation, and as such a citizen of Wisconsin by the laws of that State. It is not
 
 there
 
 a corporation or a citizen of any-other State. Being there sued it can only be brought into court as a citizen of that State, whatever its status or citizenship may be elsewhere. Nor is there anything against this view, but, on the contrary, much to support it, in the case of
 
 The Ohio and Mississippi Railroad Company
 
 v.
 
 Wheeler.
 

 †
 

 In that case the declaration averred that the plaintiffs were a corporation created by the law’s of the States of Indiana and Ohio, and that the defend
 
 *284
 
 ant was a citizen of Indiana, and the court, after referring to previous decisions, said that it must be regarded as settled that a suit by or against a corporation in its corporate name is a suit by or against citizens of the State which created it, and therefore that case must be treated as a suit in which citizens of Ohio and Indiana were joined as plaintiffs against a citizen of the latter State, and of course could not be maintained in a court of the United States where jurisdiction of the case depended upon the citizenship of the parties. The court also observed that though a corporation by the name and style of the plaintiffs in that case appeared to have been chartered by the States of Ohio and Indiana, clothed with the same capacities and powers, and intended to accomplish the same objects, and was spoken of in the laws of the States as one corporate body, exercising the same .powers and fulfilling the same duties in both States, yet it had no legal existence in either State except by the law of that State; that neither State could confer on it a corporate existence in the other nor add to or diminish the powers to be there exercised, and that though composed of and representing under the corporate name the same natural persons, its legal entity, which existed by force of law, could have no existence beyond the territory of the State or sovereignty which brought it into life and endowed it with its faculties and powers.
 

 The correctness of this view is also confirmed by the recent decision of this court in the case of
 
 The Railroad Company
 
 v.
 
 Harris.
 

 *
 

 In that case a Maryland railroad corporation was empowered by the legislature of Virginia to construct its road through that State, and by an act of Congress to extend a lateral road into the District of Columbia. By the act of Virginia the company was granted the same rights and privileges in that State which it possessed in Maryland, and it was made subject to similar pains, penalties, and obligations. By the act of Congress the company was authorized to exercise in the District of Columbia the same powers,
 
 *285
 
 rights, and privileges in the extension and construction of the road, as in the construction and extension of any railroad in Maryland, and was granted the same rights, benefits, and immunities in the use of the road which were provided in its charter, except the right to construct from its road another lateral road. And this court held that these acts did not create a new corporation either in Virginia or the District of Columbia, but only enabled the Maryland corporation to exercise its faculties in that State and District. They did not alter the citizenship of the corporation in Maryland, but only enlarged the sphere of its operations and made it subject to suit in Virginia and in the District. The corporation, said the court, “cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law of the place. One of these conditions may be that it shall consent to be sued there. If it do business there it will be presumed to have assented, and will be bound accordingly. For the purposes of Federal jurisdiction it is regarded as if it were a citizen of the State where it was created, and no averment or proof as to the citizenship of its members elsewhere will be permitted.”
 

 Second; as to the limitation to the State court of the remedy given by the statute of Wisconsin.
 
 That statute, after declaring a liability by a person or a corporation to an action for damages when death ensues from a wrongful act, neglect, or default of such person or corporation, contains a proviso “ that such action shall be brought for a death caused in this State, and, in some court established by the constitution and hnvs of the same.” This proviso is considered by the counsel of the defendant as in the nature of a condition, upon a compliance with which the remedy given by the statute can only be enforced.
 

 It is undoubtedly true that the right of action exists only in virtue of the statute, and only in cases where the death was caused within the State, The liability of the party, whether a natural or an artificial person, extends only to cases where, from certain causes, death ensues within the
 
 *286
 
 limits of the State. But when death does thus ensue from any of those causes the relatives of the deceased named in the statute can maintain an action for damages. The liability within the conditions specified extends to all parties through whose wrongful acts, neglect, or default death ensues, and the right of action for damages occasioned thereby is possessed by all persons within the description designated. In all cases, where a general right is thus conferred, it can be enforced in any Federal court within the State having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provision of State legislation that it shall only be enforced in a State court. The statutes of nearly every State provide for the institution of numerous suits, such as for partition, foreclosure, and the recovery of real property in particular courts and in the counties where the land is situated, yet it never has been pretended that limitations of this character could affect, in any respect, the jurisdiction of the Federal court over such suits where the citizenship of one of the parties was otherwise sufficient. Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.
 

 This doctrine has been asserted in several cases by this court. In
 
 Suydam
 
 v.
 
 Broadnax,
 

 *
 

 an act of the legislature of Alabama provided that the estate of a deceased person, declared to be insolvent, should be distributed by the executors or administrators according to the provisions of the act, and that no suit or action should be commenced or sustained against any executor or administrator after the estate had been declared to be insolvent, except in certain cases; but this court held, in a case not thus excepted, that the insolvency of the estate, judicially declared under the. act, was not sufficient in law to abate a suit instituted in the Circuit
 
 *287
 
 Court of the United States by a citizen of another State against the representatives of a citizen of Alabama. “ The lltli section of the act to establish the judicial courts of the United States,” said the court, “ carries out the constitutional right of a citizen of one State to sue a citizen of another State in the Circuit Court of the United States, and gives to the Circuit Court ‘original cognizance concurrent with the courts of the several States of all suits of a civil nature at common law and in equity,’ &e., &c. It was certainly intended to give to suitors, having a right to sue in the Circuit Court, remedies coextensive with these rights. These remedies would not be so if any proceedings under an act of a State legislature, to which a plaintiff was not a party, exempting a person of such State from suit, could be pleaded to abate a suit in the Circuit Court.”
 

 In
 
 The Union Bank of Tennessee
 
 v.
 
 Jolly’s Administrators
 

 *
 

 this court declared that the law of a State “limiting the remedies of its citizens in its own courts cannot be applied to prevent the citizens of other States from suing in the courts of the United States in that State for the recovery of any property’ or money there to which they may be legally or equitably entitled.” The same doctrine was affirmed in
 
 Hyde
 
 v. Stone,
 
 †
 
 and in
 
 Payne
 
 v.
 
 Hook.
 

 ‡
 

 Third; as to the alleged invalidity of the act of March 2d,
 
 1867,
 
 under which the removal from the Slate court was made.
 
 The counsel of the defendant, whilst confining his special objection to this act, questions the soundness of the reasoning of Mr. Justice Story, by which any legislation for the removal of causes from a State court to a Federal court is maintained. We may doubt, with counsel, whether such removal before issue or trial can properly be called an exercise of appellate jurisdiction. It may, we think, more properly be regarded as an indirect mode by which the Federal court acquires original jurisdiction of the causes.
 
 §
 
 But it is not material whether the reasoning of the distinguished jurist in this par
 
 *288
 
 ticular is correct or otherwise. The validity of such legislation has been uniformly recognized by this court since the passage of the Judiciary Act of 1789.
 

 The judicial power of the United States extends by the Constitution to controversies between citizens of different States as well as to cases arising under the Constitution, treaties, and laws of the United States, and the manner and conditions upon which that power shall be exercised, except as the original or appellate character of the jurisdiction is specially designated in the Constitution, are mere matters of legislative discretion. In some cases, from their character, the judicial power is necessarily exclusive of all State authority; in other cases it may be made so at the option of Congress, or it may be exercised concurrently with that of the States. Such was the opinion of Mr. Justice Story, as expressed in
 
 Martin
 
 v.
 
 Hunter's Lessee,
 

 *
 

 and this conclusion was adopted and approved by this court in the recent case of
 
 The Moses Taylor.
 

 †
 

 The legislation of Congress has proceeded upon the correctness of this position in the distribution of jurisdiction to the Federal courts. The Judiciary Act of 1789, as observed in the case of
 
 The Moses Taylor,
 
 declares, “ that in some cases from their commencement such jurisdiction shall be exclusive; in other cases it determines at what stage of procedure such jurisdiction shall attach, and how long and how far concurrent jurisdiction of the State courts shall be permitted. Thus, eases in which the United States are parties, civil causes of admiralty and maritime jurisdiction, and cases against consuls and vice-consuls, except for certain offences, are placed from their commencement exclusively under the cognizance of the Federal courts. On the other hand, some cases in which an alien or a citizen of another State is made a party may be brought either in a Federal or a State court, at the option of the plaintiff, and if brought in the State court may be prosecuted until the appearance of the defendant, and then
 
 *289
 
 at his option may be suffered to remain there or may be transferred to the jurisdiction of the Federal courts. Other cases, not included under these heads but involving questions under the Constitution, laws, treaties, or authority of the United States, are only drawn within the control of the Federal courts upon appeal or writ of error after final judgment. By subsequent legislation of Congress, and particularly by the legislation of the last four years, many of the cases which by the Judiciary Act could only come under the cognizance of the Federal courts after final judgment in the State courts, may be withdrawn from the concurrent jurisdiction of the latter courts at earlier stages, upon the application of the defendant. The constitutionality of these provisions cannot be seriously questioned and is of frequent recognition by both State and Federal courts.”
 

 When the jurisdiction of the Federal court depended upon the citizenship of the parties, the case could not be withdrawn from the State courts after suit commenced until the passage of the act of 1867, except upon the application of the defendant. The provision of the Constitution extending the judicial power of the United States to controversies between citizens of different States had its existence in the impression, that State attachments and State prejudices might affect injuriously the regular administration of justice in the State courts. The protection intended against these influences to non-residents of a State was originally supposed to have been sufficiently secured by giving to the plaintiff in the first instance an election of courts before suit brought; and where the suit was commenced in a State court a like election to the defendant afterwards. The time at which the non-resident party should be allowed thus to make his election was evidently a mere matter of legislative discretion, a simple question of expediency. If Congress has subsequently become satisfied, that where a plaintiff" discovers, after suit brought in a State court, that the prejudice and local influence, against which the Constitution intended to guard, are such as are likely to prevent him from obtaining justice, he ought to be permitted to remove his case into a
 
 *290
 
 National court, it is not perceived that any constitutional objection exists to its authorizing the removal, and, of course, to prescribing the conditions upon which the removal shall be allowed.
 

 It follows, from the views we have expressed, that the objection to the jurisdiction of this action by the Circuit Court, upon the grounds advanced by the defendant, cannot be maintained.
 

 It only remains to say a few words upon the refusal of the court to give the instructions prayed by the defendant, and upon its ruling in the admission of certain evidence, and its charge to the jury.
 

 The facts of the case are very few, and with respect to most of them there was little conflict of evidence. [The learned justice here stated the facts of the case, aud continued :]
 

 Upon these facts the court gave to the jury a clear and full charge upon the duties and responsibilities of the railroad company in crossing the street of the city, with its engines and trains, aud upon the care, prudence, and caution which it was incumbent upon the deceased to exercise in crossing the tracks; and as to the damages which the jury were authorized to find, in case they were satisfied that the employees of the company had been guilty of negligence, and that such negligence had caused the death of the deceased.
 

 The counsel of the plaintiff had requested three special instructions to the jury, and the counsel of the defendant had requested nineteen special instructions. The court, however, declined to give any of them except as they were embraced in its general charge. Some of the instructions prayed by the defendant presented the law respecting the liability of the company correctly, and some of them were based upon an assumed condition of things which the evidence did not warrant. But it is not error for a court to refuse to give an extended series of instructions, even though some of them may be correct in the propositions of law
 
 *291
 
 which they present, if the law arising upon the evidence is given by the court with such fulness .as to guide correctly the jury in its findings, as was the case here; nor is a judgment to be set aside because the charge of the court may be open to some verbal criticisms, in particulars considered apart by themselves, which could not when taken with the rest of the charge have misled a jury of ordinary intelligence. The propriety of the rulings of the court in this case is fully vindicated in its opinion on the motion for a new trial.
 

 The evidence of the condition of the deceased—that she was
 
 enceinte
 
 at the time of the accident—could not materially have affected the jury in the estimation of the damages, after the clear and explicit charge of the court, as to the character of the damages which only they were authorized to consider.
 

 The other evidence in the case, to the admission of which objection was taken, was not material, and could not have influenced the result.
 

 Judgment affirmed.
 

 *
 

 Paul
 
 v.
 
 Virginia, 8 Wallace, 177.
 

 †
 

 1 Black, 286.
 

 *
 

 12 Wallace, 65.
 

 *
 

 14 Peters, 67.
 

 *
 

 18 Howard, 506.
 

 †
 

 20 Howard, 170.
 

 ‡
 

 7 Wallace, 425
 

 §
 

 Dennistoun
 
 v.
 
 Draper, 5 Blatchford’s Cir. Ct. 340.
 

 *
 

 1 Wheaton, 334.
 

 †
 

 4 Wallace, 429, derided at the December Term, 1866.