Johnson, J.
I am unable to concur in the opinion announced in this case.
The magnitude of the interests, both public and private, •affected by the conclusions reached, warrants me in placing upon record the reasons for this dissent.
The action below was brought by Cary, a citizen of Ohio, in the Court of Common Pleas of Belmont county, to recover damages for injuries to his real estate, committed by the defendant, a corporation styled “ The • Baltimore and Ohio Railroad Company,” while that corporation 'was engaged in extending the Central Ohio Railroad track .to connect the same with a bridge across the Ohio river, at Bellaire, in said county.
The damages claimed exceeded five hundred dollars. The defendant filed a petition for a removal to the circuit court of the United States, on the ground that it is “a corporation created by the laws of the State of Maryland, and was therefore, at the time the suit was brought, and *217 now is, a citizen of the State of Maryland, and is to be so regarded for the purposes of this petition.
The plaintiff’s answer admits that the Baltimore and Ohio Railroad Company was originally created by the laws of the State of Maryland, but avers that as to this action it was and is a citizen of the State of Ohio; that such corporation, under authority of the laws of Ohio, leased, from the Central Ohio Railroad Company as reorganized, its road, with all its corporate powers conferred by Ohio law, and as such lessee it derives all its powers, franchises, and privileges from such lease, and the laws of Ohio, under which said road is owned and operated by defendant.
It appears from the answer that this lease is in perpetuity, and therefore it is averred that the defendant is the lessee and owner of the road, and as such committed the grievances complained of, on the line of the Central Ohio Railroad, in the State of Ohio. To this the defendant demurred. This demurrer presented the single question, whether, upon the facts thus admitted, the defendant in this action is to be regarded as a citizen of Ohio or of Maryland, within the meaning of article 3, section 2, of the constitution of the United States, and of the act of 1789.
Is a corporation,'originally created by the State of Maryland, and subsequently authorized by the laws of Ohio, to become the lessee of an Ohio road, constructed, operated, •and leased solely under Ohio laws, which confer on the lessees no further or greater powers, franchises, or privileges -than was possessed by the lessors, responsible as a citizen ■of Ohio for acts committed within this state in the exercise of the powers and franchises conferred by such lease, where under such laws it is liable to be served with process within this state ?
When narrowed down, the question resolves itself into this: What is the test of citizenship of a corporation, within the meaning of the judiciary article of the Constitution of the United States?
In the case of the Bank of Augusta v. Earle, 13 Peters, *218 512, it was held: “ That the artificial person, or legal entity, known to the common law as a corporation, can have no legal existence. out of the bounds of the sovereignty by which it is created; that it exists only in contemplation of law and by force of law, and where that law ceases to operate, the corporation can have no legal existence. It must dwell in the place of its creation.” This doctrine has been repeatedly affirmed, and especially in Paul v. Virginia, 8 Wallace, 168; Lafayette Insurance Co. v. French, 18 Howard, 407; Ohio and Mississippi Railroad Co. v. Wheeler, 1 Black. 295.
Long before the case of the Bank of Augusta v. Earle, it had been decided that a corporation was not a citizen, within the meaning of this article of the Constitution of the United States, unless the persons who compose the corporate body were all citizens of the state wherein it exercises its corporate powers.
In such case it was regarded as the joint suit of the individuals acting under the name conferred upon them, and consequently entitled to maintain such suit against the citizen of another state in the corporate name. Hope Insurance Company v. Boardman, 5 Cranch, 57; U. S. Bank v. Devaux, 5 Cranch, 61; U. S. v. Planters’ Bank, 9 Wheat. 410; Commercial Bank v. Slocom, 14 Pet. 60.
In the case of The Louisville, C. & C. R. R. Co. v. Letson, 2 Howard, 497, after grave consideration, it was held,, modifying the former ruling, that the court would not look to the actual residence of the members of the corporation,, hut would presume they were citizens of the same state, in which alone the corpoi’ate body has a legal existence, and that a suit by or against a corporation, in its corporate name,, must be presumed to be a suit by or against citizens of the state creating the corporate body; and that no averment or evidence to the contrary is admissible, for the purpose of withdrawing the suit from the jurisdiction of a court of the United States.
In that case, which was ably argued and carefully considered, it was sought to oust the federal court of jurisdic - *219 tion because some of the stockholders were not citizens of the state where the corporation existed, and was sued.
The syllabus on this point was: “A corporation created by, and transacting business in a state, is to be deemed an inhabitant of the state, capable of being treated as a citizen, for all the purposes of suing and being sued, and an averment of the facts of its 'creation and the place of transacting business is sufficient to give the circuit courts jurisdiction.”
In the opinion of the court, it is said: “ A corporation created by a state, to perform its functions under the authority of that state, and only suable there, though it may have members out of the state, seems to us to be a pei-son, though an artificial one, inhabiting and belonging to that state, and therefore entitled, for the purpose of suing and being sued, to be deemed a citizen of that state.” Again: “Like a citizen it makes contracts, and though in regard to what it may do in some particulars, it differs from a natural person, and in this especially, the manner in which it can sue and be sued, it is substantially, within the meaning of the law, a citizen of the state which created it and where its business-is done, for all the purposes of suing and being sued.”
This subject again came before the court in Marshall v. The B. & O. R. R. Co., 16 Howard, 314. That was a suit by a citizen of Virginia, in the circuit court of Maryland^ against the defendant, as a body incorporated by the laws-of Maryland.
In that case the court say: “ The necessities and conveniences of trade and business require that such numerous-associates and stockholders should act by representation, and have the faculty of contracting, suing and being sued in a fictitious or collective name. It is not reasonable that those who deal with such persons should be deprived of valuable privileges by a syllogism, or rather sophism, which deals subtly with words and names, without regard to the* things or persons they represent.” . . . “ Eor all the purposes of acting, contracting, and judicial remedy, they *220 can speak, and act, and plead only through their representatives or curators.”
“ The persons who act under these faculties, and use this corporate name, may be justly presumed to be resident in the state, which is the necessary habitat of the corporation.”
Perhaps no case throws more light on the problem before us than The Ohio & Mississippi R. R. Co. v. Wheeler, 1 Black. 295. That was an action by the corporation, described as having been “ created by the laws of the States of Indiana and Ohio, and having its principal place of business in Cincinnati, in the State of Ohio, a citizen of Ohio,” brought in the United States Circuit Court of Indiana, against the defendant, a citizen of Indiana, who pleaded to the jurisdiction on the ground that the defendant was also a citizen of the same state, being a body corporate, by virtue of a law of the State of Indiana, under which the road was built and operated. The plea was sustained, on the ground that the corporation was, in fact, a citizen of Indiana. It was held: That a coi'poration, endued,with capacities and faculties by the co-operating legislation of two states, can not have one and the same legal being in both states ; that the legal entity or person which exists by force of law can have no existence beyond the limits of the state which gives it life and power to act, and that the corporation in Indiana is a separate and distinct body from that of the same name in Ohio, and that “ they can not be joined in a suit as one and the same plaintiff.\ nor maintain a suit in that name against a citizen of Indiana or Ohio in a Circuit Court of the United States.”
The significance of this decision consists in the holding that, although this corporation was operating one continuous line of railway in two states, with its principal office and place of business in Ohio, yet, because it owed its right to build and operate its road in Indiana to the legislation of that state, it was, in fact, for the purposes of citizenship, ■two distinct corporations, one a citizen of that state, the ■other of Ohio, and could sue in neither state in the courts •of the United States. In legal effect, it was two corpora *221 tions uniting as one plaintiff, the one being a citizen of Indiana, the other of Ohio.
Insurance Company v. Francis, 11 Wall. 415, presented this question, upon this state of facts : The Germania Eire Insurance Company, which was incorporated by and had its head office in New York, established an agency»in Aberdeen, Mississippi, and the averment was, “ a corporation of New York, located in Aberdeen, and doing business there.” The court held that this allegation was, in legal effect, that the company was a citizen of New York, following the cases of O. & M. R. R. Co. v. Wheeler, and Louisville R. R. Co. v. Litson, adding, as the reason : “ Because a corporation can have no legal existence outside of the sovereignty which created it. Its place of residence is there, and nowhere else.”
The next case in order is that of The B. & O. R. R. Co. v. Harris, 12 How. 65, which was twice argued. The company had a charter from the State of Maryland, to build and operate a road from Baltimore to the Ohio river, and from the same point, by subsequent grant, to run a branch to the District of Columbia.
Subsequently, the State of Virginia granted to that corporation the same rights in that state as it had in Maryland.
Congress also authorized the company to extend its branch into the District of Columbia. The question was, whether the corporation could be sued in the courts of the District of Columbia for injuries received as a passenger on the road in the State of Virginia. The office of the corporation, where its board met and transacted business, was in Baltimore. The writ was served on the president of the company, within the district. The jurisdiction of the court was limited to “ inhabitants of the district, or persons found within the district.”
It was claimed by the company, on the authority of The O. & M. R. R. Co. v. Wheeler, that, as a corporation of Maryland, it was not an inhabitant of the District of Columbia ; but it was held: That the acts of Congress, and *222 of the State of Virginia, were in the nature of enabling acts, and not, as in the Wheeler case, acts creating new corporations, when the unity of the road was unchanged in nam,e, locality, election, and power of officers, mode of declaring dividends, and doing all its business, and that, in such case, no new corporation was created, and that in view of such unity, it was liable as an inhabitant of the District of Columbia.
The same question that arose in the Wheeler case was again before the court in Railway v. Whitten, 13 Wall. 270. That was an action against the Chicago and Northwestern Railway Company brought in one of the state courts of Wisconsin to recover over $500. After service, the plaintiff, who was a citizen of Illinois, moved for a transfer to the Circuit Court of the United States for the district of Wisconsin. The motion was resisted on the ground that the defendant was a corporation existing under the laws of Illinois, Wisconsin, and Michigan, and its line of railway was located and operated in each of those states; that its entire line of railway was managed and controlled by a single corporation; that all its powers and franchises were exercised and its affairs managed and controlled by one board of directors and officers; that its principal office and, place of business was at the city of Chicago in Rlinois, and that there was no office for the control or management of the general business and affairs of the corporation in Wisconsin.
The grounds for the motion were that the plaintiff was a citizen of Illinois, and the defendant was a citizen of Wisconsin. The company resisted the removal on the ground that it was a corporation by the laws of Illinois, Wisconsin, and Michigan, with its board of officers and headquarters at Chicago, and with no office for the management of its corporate business in the latter state. It was held, upon this state of facts, that the corporation being sued in Wisconsin, it could only be brought into court as a citizen of that state, whatever its citizenship ivas elsewhere.
The language of the court was: “ The plaintiff' is a citizen of the State of Illinois, and the defendant is a coi’pora *223 tion created under the laws of Wisconsin. Although a corporation, being an artificial body created by legislative power, is not a citizen within several provisions of the constitution ; yet it has been held, and that must now be regarded as settled law, that where rights of action are to be enforced, it will be considered as a citizen of the state where it was created, within the clause extending the judicial power of the United States to controversies between citizens of different states. The defendant, therefore, must be regarded for the purposes of this action as a citizen of Wisconsin. But it is said, and here the objection to the jurisdiction arises, that the defendant is also a corporation under the laws of Illinois, and therefore is also a citizen of the same state with the plaintiff. The answer to this proposition is obvious. In Wisconsin the latos of Illinois have no operation. The defendant is a corporation, and as such a citizen of Wisconsin by the laws of that state. Being there sued, it can only be brought into court as a citizen of that state, whatever its status or citizenship may be elsewhere.” 13 Wall. 283.
Referring to the case of the O. & M. R. R. Co. v. Wheeler, the court says, that neither state could confer on the company corporate existence in the others, nor add to or diminish the powers then exercised, and although composed of and representing under the corporate name the same natural persons, yet its legal entity, which existed by forge of law, could have no legal existence beyond the state which brought it into life, and endowed it with its faculties and powers.
Here was a corporation with a continuous line of road and principal office, where all its corporate powers were exercised in one state, but owing its right to operate the road to the legislation of several states through which it passed, held to be a citizen of any one of such states where, by the law authorizing it to do so, it could be sued. In Lafayette v. French, 18 How. 404, it was held that a state could impose on a foreign corporation, as a condition to its doing business in such state, that it should be liable to be sued therein, and the court say, “ being sued there, it can *224 only be brought into court as a citizen of that state, whatever its status elsewhere.” We think this case is decisive of the one at bar. In both eases, the court looks to the state which endowed the corporation with its faculties and powers and where it may be sued, to determine its citizenship regardless of its status elsewhere.
In The B. & O. R. R. Co. v. Gallahur, 12 Gratt. 655, it was held that the Baltimore and Ohio Railroad Company was a Virginia corporation by virtue of the legislation of that state, wherein it was provided (after reciting the charter of the company as enacted by the State of Maryland), that the corporation thus created should have all the rights and be subject to all the obligations in Virginia, as conferred or imposed on the company in the (State of Maryland.
So in Maryland v. The Northern Central R. R. Co., 18 Md. 193, it was held that a corporation owing its existence in part to the State of Maryland, and in part to the State of Pennsylvania, formed by the consolidation of corporations existing by separate acts of those states, and exercising its franchises and owning and operating its line of road in ea%h state, must, for the purposes of justice, be regarded in the ■courts of each state from which it derives its being as a domestic corporation to the extent of the state in which it acts, and as a foreign corporation as to the other sources of its existence.
’Where there was one corporation, owning and operating a continuous line of railway through two states, formed by uniting two distinct corporations, one created by each state, and both united by the acts of the two states, it was held that this constituted it a domestic corporation of each of the states. Sprague v. The H. P. & F. R. R. Co., 5 R. I. 233.
In Goshorn v. Supervisors, 1 West Va. 308, the Hemp-held Railroad Co. was incorporated by Pennsylvania to build a road from Greensburg, in that state, to the boundary line; and the State of Virginia afterward authorized it to extend its road to Wheeling, in the latter state.
It was held that the act of Virginia conferred on the Hempheld company such rights and privileges as to make *225 it a Virginia corporation. It is said no particular or precise-form of words is necessary to the creation of a corporation,, but it may result from implication and intendment.
■ It is laid down in the text books that no particular form of words is essential to create or confer corporate power.. Any language, clearly manifesting the legislative intent,, whether in general terms or by special enactment, is sufficient. Angel & Ames on Corp.
It is also now well settled, that the lease of the franchises- and property, of one railroad corporation by another in* Ohio does not confer on the lessee powers not possessed by the lessor.
This question was directly before the Supreme Court in Campbell v. M. & C. R. R. Co., 23 Ohio St. 168. There the M. & C. R. R. Co., which had been constructed under a special charter granted in 1845, had, under section 24 of the-general corporation law of May 1, 1852 (which is the same-law under which the present lease was made), purchased the Scioto and Hocking Valley Railroad, which had been constructed under the law of 1848. The vendee claimed the right to operate the road under its own charter, and not under the charter of the vendor.
The question before the court was, whether the purchased road was governed, as to rates for transportation, by the law under which it was built, the act of 1848, or by the law governing the M. & C. R. R.
The 24th section provides for leasing as well as purchasing T and the same rules must be applicable to both. It is said : “ As the power of the purchasing company to receive tolls, as conferred by its own charter, is limited to roads constructed under its charter, it must be inferred that the legislature intended the purchasing company to succeed to the powers and privileges of the vending company, and to none other. . . . That by a sale of the road no greater rights therein can pass to the vendee than were owned by the vendor.”
The same is equally true as between lessor and lessee, under the same statute.
*226 This question, .as between lessor and lessee, -was decided in The Penn. R. R. Co. v. Sly, 65 Penn. St. 205, where it was 'held, that the Pennsylvania R. R. Co. leasing the road of the Philadelphia and Erie Railroad Co., with all their rights, powers, and privileges, was not subject to the •charges fixed by its own charter, but to the regulation in -the charter of its lessors. It is said: “ By a lease a corporation as well as a natural person would succeed to all the rights and be subject to all the limitations imposed on the lessor,” and that, “ the lessee is the assignee, for a term or period,of the lessor, and is his bailiff to hold possession for him.” “ The legislature, by authorizing another corporation to take such lease, have, by necessary implication, conferred them.”
Both reason and authority establish the proposition that the vendor or lessee of a railroad derives all its powers and -franchises to operate the road from the charter and legislative provisions conferred on the vendor or lessor.
The B. & O. R. R. Co. derives all its powers to lease and •operate this road, from the State of Ohio. Its Maryland •charter was inoperative here. It can do no act as a .corporation except such as the Central O. R. R. Co. was authorized to do.
Prom a careful analysis of the foregoing cases, the followfing rules are deducible:
1. That a corporation created by the laws of a given ■•state, as a legal entity, can have no legal existence outside of that state; and that if the state of its creation permits •or authorizes it to transact any of its corporate business •outside of such state, it can only exercise such extra-territorial powers by the license or permission of other states, •or under principles of comity between states.
2. That where such á corporation, deriving all its corporate power to act from the state of its creation, exercises "these granted powers in other states, it is conclusively presumed to be a citizen of the state of its creation for the purposes of determining the jurisdiction of the United States.
3. But where a corporation, as for instance a railroad *227 company, created by the separate but concurrent acts of two or more states, and by each is authorized to construct a road in each state, making together one continuous line of road, all operated by one corporation, with one board of officer’s, and one place of- business in one of such states; it is nevertheless a citizen of each of the states granting it such powers, and in which it may be served.
4. So, where existing corporations of different states, owning and operating roads in their respective states, are authorized by their respective states to consolidate and form one company, the latter takes the place of each original company, and is, as to that part of the road and business in any one of the states, a citizen of that state, whatever may be its status in the other state or states.
That where the matter in controversy is the result of the exercise of its franchises in any one of such states, it is an inhabitant and citizen of that state if by the law of that state it can be served there. .
5. Where a coi’poration originally created by one state, with authority to construct and operate a road therein, is authorized by another state to extend its road through the latter state, or to purchase or lease such a road already constructed, it thereby becomes a corporation of such latter state, as to all exercise of corporate powers therein. Its powers and franchises are measured by the laws of the state wherein it exercises its functions, and not by those of the state of its original creation.
6. Apply these principles to the case at bar. The lessee succeeds only to the powers and franchises of the lessor, and is subject to the same liabilities. All these are derived from the laws governing the Central Ohio Railroad Company as reorganized. By the lease they were transferred to +he Baltimore & Ohio Railroad Company. It was thus clothed with authority to own and operate'a road in Ohio. It conferred on a corporation, originally created by the State of Maryland, the right to be a corporation in Ohio.
In legal effect, it was an authority to an existing foreign corporation to become an Ohio corporation, and enjoy the *228 corporate powers conferred on the Central Ohio Railroad Company.
It was a legislative authority for a foreign corporation to-become an Ohio corporation by lease or purchase from a domestic corporation, its charter and property, with all its powers, immunities and privileges. The lessee became the bailiffs of the lessor for part of the term of the lessor, and therefore stands in his stead. Co. Lit. 239 b., note 2.
The legislature adopts a corporation of another state, so-far as to permit it to take the place of one created by Ohio law. Instead of requiring the stockholders of the Maryland corporation to take out a certificate and become-a de jure corporation under our statute, it permits a corporation already formed to dispense with this step in the ci’eation of a domestic corporation to become such under*its existing name.
It is claimed that the case of Ohio ex rel. v. Sherman, 22 Ohio St. 411, is in conflict with the conclusion hex-e x’eaehed, but a careful examinatioxx of the issue there presented will show that such is not the fact.
There the questioxi was by what authority certaixx persons wex’e assuming to act as directors of the Pittsburgh, Ft. Wayne and Chicago Railway Compaxxy, which was the owner of and opex-ating a road thx’ough the state. That company was the vendee or grantee of the road and franchises of the Pittsbui’gh, Ft. Wayne and Chicago Railroad Company, which had been formed by the consolidation of distinct companies and roads existing by the laws of Pennsylvania, Ohio, Indiana and Illinois. The road, while-owned by the consolidated company, was sold by order of coux’t, and passed to the Pittsburgh, Ft. Wayne and Chicago Railway Company.
The inquix’y was based on the expi’essed assumption that the consolidated company was an Ohio corporation, and the real question was, did the conveyance passffo the railway company its right tobe an Ohio corpox’ation? The court held that this deed of conveyance, made under the act of 1863 to this Pennsylvania corporation, did not tx’ansfer the *229 right of the Pittsburgh, Et. Wayne and Chicago Railroad Company, an Ohio corporation, to be an Ohio corporation, because the law of 1863 did not provide for the individual liability of its members.
But for this it is implied, though not expressed, that this is the only reason why it is not a legal corporation of Ohio. The whole reasoning of the court rests upon this ground.. It is held that the transfer of the franchises to be a corporation under the Ohio law was in legal effect a surrender of the old charter and taking out a new, similar to the grantee; but as such grant of this new charter could not be made, •except incumbered with the individual liability imposed by the constitution of Ohio, and as this was not done, the .grantee was not a “legal.Ohio corporation.”
But for this constitutional provision there can scarcely be a doubt the court would have held that this transfer of the franchise and property of the Pittsburgh, Et. Wayne .and Chicago Railroad Company to the Pittsburgh, Et. Wayue and Chicago Railway Company, under Ohio laws, made the vendee an Ohio corporation, as was held in the numerous cases cited.-
There, the real question was, whether, by the deed of •conveyance, under the act of 1863, the vendees became an •Ohio corporation. The answer is in the negative for the reason stated, and not because, upon common law principles, it was not competent for the legislature, in the absence of the constitutional provision, to authorize such transfer.
In the ease at bar, the question of individual liability is wholly immaterial to the questiou at bar.
Here, the sole question is, whether the defendant, within the meaning of the constitution of the United States, is in fact a citizen of Ohio.
This does not depend on individual liability clauses, or absence of them, in state constitutions, but on the meaning of the word citizen as found in the judiciary article of ■the constitution of the United States. Upon the facts ¡stated, there can be no doubt that, under the rules laid *230 down in O. & M. R. R. Co. v. Wheeler, and in Railway v. Whitten, and the numerous other cases cited, the Pittsburgh, Et. Wayne and Chicago Railway Company was in fact a citizen of each of the states through which its road runs, and from which it-has derived its corporate powers within such state. And upon the question of jurisdiction of the federal courts, this corporation is in fact- an inhabitant and citizen of each of.such states, although, under the peculiar provisions of the constitution of Ohio, it is not de jure a domestic corporation.
Again, it is said the decision of this court, in Passenger Ass’n Co. v. Pierce, 27 Ohio St. 155, controls this case. That case follows that of Insurance Co. v. Morse, 20 How. (U. S.) 455.
Both these cases turn on the validity of an act of a state requiring a foreign corporation to waive its right, as a citizen of another state, to remove a case to the federal courts.
In both, the foreign citizenship is admitted, and the right of a state to exact a waiver of such citizenship was the only point. • -
Here the foreign citizenship is denied, and the claim is made that it is a domestic citizen. The question of waivei does not arise upon the record in the case before us.
Again, those cases were unlike this. They were all cases of foreign corporations, exercising in other states, through courtesy or by legislative permission, the powers and franchises conferred by the state of their creation. They derived none of their corporate franchises from the state where doing business, but acted entirely under their home charters, while in this case they derive none of their powers from their home charters, but all from the state where the business is done.
But for that provision of our constitution as to the individual liability of■ stockholders, there can be no doubt that the plaintiff in error became a de jure as well as a de facto domestic corporation, subject to the sovereign control of the state as fully as the lessor corporation. It assented to the legislation authorizing it to have and operate the *231 road under its Ohio charter. By this legislation a condition was imposed that it'might be sued in Ohio. It thus, to all intents, became de facto, if not de jure, an Ohio corporation — a citizen of Ohio — as fully as if the stockholders of this Maryland corporation had taken out an Ohio charter. Eor these reasons the judgment of the common pleas and district court should have been affirmed.