MISSOURI, KANSAS & TEXAS RY. Co. *v.* TEXAS & ST. LOUIS RY. Co.

(*Circuit Court, N. D. Texas.*)

1. JURISDICTION—CORPORATIONS EXISTING UNDER THE LAWS OF TWO STATES.

Where a corporation is organized under the laws of one state it becomes a citizen of that state, although the same persons, by the same corporate name, have been incorporated with the same powers and the same objects by another state. Such an act of incorporation must be construed as only a license enlarging the field of its operations, and it does not constitute it a corporation of that state. but shorn of none of its qualities as a corporation of the state under which it is organized. It is privileged to elect to sue in the United States courts.

2. CONSTITUTIONAL CONSTRUCTION—INTERSECTING RAILWAYS.

Article 10, § 1, of the constitution of Texas, which provides that "every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad," is not self-acting, but requires appropriate supplementing legislation prescribing the regulation of its exercise.

3. SAME—INJUNCTION—IRREPARABLE DAMAGE.

Railroad crossings, by intersecting lines, are such a source of danger from liability to collision in the transit of trains as could not be adequately compensated in damages, or by any moneyed consideration, and, except under the pressure of some paramount necessity, their construction should be enjoined.

4. RIGHT OF WAY.

When the right of way over private property, or the right of crossing a public highway, has been acquired, certain common rights attach to the new acquisition, which are to be considered, protected, and enforced by the proper tribunals.

In Equity. Application in chambers for temporary injunction.

*W. H. Herman, Welborn, Leake & Henry,* and *R. C. Foster,* for complainant.

*Hubbard, Whitaker & Bonner* and *Clark & Dyer,* for defendant.

McCORMICK, D. J. The complainant, in its bill and amended bill, avers in substance that it is a corporation duly organized under the laws of Kansas, and as such is also authorized, by act of the legislature of Texas, to extend its railroad and telegraph through Texas; that it is now engaged in extending its lines of railroad through Texas, having portions thereof in operation, and other portions located and in process of construction; that in January last it located its line through McLennan county and into the city of Waco, approaching the line of the Central Railroad at that point on a tract of land known as the Norris land, and in March last obtained from the proper party full title to the right of way over said land on complainant's said located line, and is now engaged in constructing its main line and side track on said Norris land, on said right of way; that

defendant is a corporation created by the laws of Texas, and is also constructing its railroad through McLennan county and into the city of Waco, having originally located its line so as to approach said Central Railroad at a point some distance west of the point on the Central where complainant's line intersected the Central; that complainant's line crosses defendant's line at the distance of a little less than one mile, from its intersection with the Central line, and from said point of crossing complainant's line, and defendant's line as originally located, gradually diverge from each other as they respectively approach the Central Railroad's line; that complainant and defendant were proceeding with the construction of their respective railroads on their respective lines as so originally located; that defendant failed to obtain the consent of the said Central road to have its railroad crossed at the point where defendant's line, as originally located and being constructed, would have crossed said Central road, and thereupon the defendant changed the location of its road so as to bring the same nearer to complainant's line, and to cross the Central at a point only a few feet west of the point at which complainant's line crosses said Central; that by said change of location, which change was made after complainant located its line, and had procured its said right of way on said Norris land, and was engaged in the construction of its said tracks thereon, complainant was disappointed in its purpose of effecting its connection with said Central road by putting in a "Y" on the west of complainant's line, leaving the space on the west thereof to be occupied by the defendant's main and connecting tracks; that, after some work had been done by defendant on its changed line, the defendant undertook, without first obtaining or asking complainant's consent, and without making, or offering to make, any compensation therefor to complainant, to cross said complainant's main and side tracks, and right of way on said Norris land, and extend its (defendant's) line to a point of intersection with said Central line east of complainant's line, and to return on the line of said Central's track and recross complainant's line, said last-named two crossings being not more than 290 feet, the one from the other, and making three crossings of complainant's main track and one of its side tracks within the space of one, mile; that upon either side of its line the defendant can obtain as easy and practicable a route for its road, and space for its connections with said Central, without making either of said last-named crossings of complainant's line of main track and side track; that said last-named crossings are unnecessary, and could only be maintained at

great expense, and would be such a source of danger of collision in the transit of trains as could not be adequately compensated by any moneyed consideration; that the complainant having first located its line there, and procured its right of way, and being in the actual occupancy thereof, and engaged in the construction of its main track and side track thereon, requires the sole and unobstructed use thereof for its business, and to suffer such crossing there would work irreparable injury to complainant; that defendant is threatening and attempting violently to effect said crossing, against the objection and warning of complainant. And complainant's prayer is for an order restraining and enjoining defendant from making said crossings against complainant's objection, "and from attempting to compel by law a right to do so."

The answer in substance is—*First*, that complainant is not such a party as to the matters in issue as can sue the defendant in reference thereto in the circuit court of the United States; *second*, that defendant does not propose to cross complainant's line with defendant's main track, but only to lay a side track across the complainant's line to connect with the Central, and return with the Central line to defendant's main track; that defendant has found it impracticable to connect with the Central in any other manner, or at any other place; that defendant expects and now offers to make and maintain said crossing at defendant's expense, and that if not allowed to make its connection in that way with the Central, defendant will be greatly damaged.

On the question of jurisdiction, raised by the answer, the proof shows that the complainant was organized as a corporation under a general act of the state of Kansas, and that on the second of August, 1870, the legislature of Texas passed "An act in relation to the Missouri, Kansas & Texas Railway Company," giving said company the right to extend its railroad through the state of Texas, and, among other things, not material here, providing—

"That the said company, in constructing, extending, and operating its railroad and branches, shall have and exercise and are hereby vested with all the rights, powers, privileges, and immunities granted by its acts of incorporation and amendments thereto, so far as the same may be applicable to this state, and not inconsistent with the constitution thereof, together with all the rights, powers, privileges, and immunities conferred by all general laws now existing or that hereafter may be passed by the legislature of the state of Texas, in relation to railroad corporations, in same manner and to same extent as if incorporated by this state, provided the said company shall keep an office within the state."

This question has been treated by the supreme court as one full of difficulty and delicacy. In one of the earliest cases in which the right of a corporation to sue in the circuit court was entertained, the language of the opinion was nervously vigorous in rejecting the proposition that such a purely legal entity and artificial intangible creature of the law of a state could be deemed a citizen of a state within the meaning of the constitution; but feeling under equal obligation to entertain jurisdiction in a proper case, and to decline to usurp jurisdiction in any case, it was held in that case, not without much misgiving, as we now know, that although such a creature of the law could not be a citizen, it might be (and in that case was) composed of real persons who were citizens, and that such citizens, their citizenship being such that suing in their own names the suit could be entertained, might sue in the corporate name which represented them. 5 Cranch, 87.

In a later case it was considered that while the corporation was an intangible creature of the law, real persons having dealings with it encountered very real natural persons representing it in the state creating it, and that these real natural persons constituting its management were the parties in fact to its transactions and to its litigation, and that so contemplated, and for the purpose of determining the question of jurisdiction in suits, a corporation created by and doing business in a particular state is to be deemed, to all intents and purposes, as a person, although an artificial person, an inhabitant of the same state, for the purposes of its incorporation, capable of being treated as a citizen of that state as much as a natural person. And it has grown to be the settled doctrine that the real persons composing a corporation are conclusively presumed to be citizens of the state incorporating it, and no inquiry in relation thereto is permitted. 2 How. 558; 16 How. 325; 20 How. 232. In a later case a new phase of the question was met, and it was held that where two states (Ohio and Indiana) had each chartered a corporation by the same name, and with the same capacities and powers, and intended to accomplish the same objects, and which was spoken of in the laws of said states respectively as one corporate body, exercising the same powers and fulfilling the same duties in both states, said corporate body cannot maintain a suit against a citizen of Ohio or Indiana in the circuit court. 1 Black, 297, 298. Again, where a citizen of Illinois brought suit in Wisconsin against the Chicago & Northwestern Railway Company, a corporation created by and existing under the laws of the states of Wisconsin, Illinois, and Michigan,

operating its line in part in each of these states, the whole of the said line being managed by the defendant as a single corporation, whose principal office and place of business was in the city of Chicago, in the state of Illinois, on objection to the jurisdiction of the circuit court on the ground that the defendant was a citizen of Illinois, (of which state plaintiff was a citizen,) the objection was overruled, and it was held that in Wisconsin the defendant was a citizen of Wisconsin. 13 Wall. 284.

In delivering the opinion of the court in the case just cited, Mr. Justice Field refers to a recent decision in the case of the *Railroad* v. *Harris*, 12 Wall. 65, as confirming the correctness of the positions taken in the opinion he was then delivering. The case of the *Railroad* v. *Harris* presents a parallel, in all essential points, to the case here. The state of Maryland incorporated the Baltimore & Ohio Railroad. The state of Virginia passed an act reciting the Maryland act in full, and granting to the company the right to extend its road through the state of Virginia. Congress also passed acts referring to the Maryland act, (but not reciting it,) by which the company was authorized to extend a line of its road to the city of Washington, in the District of Columbia. Harris, a citizen of the District of Columbia, sued the company in the district on a cause of action growing out of the negligent handling (as alleged) of its trains at a named point in the state of Virginia. The company objected to the jurisdiction on the ground that, being chartered by Maryland, it was a citizen of that state; that it could not emigrate, and was not liable to suit in the district. On the case being considered in the supreme court there was a unanimous concurrence of opinion in favor of holding the company liable to the suit in the district, but some diversity of opinion as to the ground upon which that holding should repose; and the case was set down for reargument on the question as to the construction of the legislation of Virginia and of congress subsequent to that of Maryland originally incorporating the company; whether such subsequent legislation was a new birth, making the company a Virginia corporation in Virginia, and a corporation created by congress in the district of Columbia, or was such subsequent legislation only a license by which the field of the company's operation was extended; and, after this deliberate consideration, and full argument of counsel on this question,—the turning question in this case, and thought to be of the highest importance in that case,—the court held that the acts of Virginia and of congress did not incorporate said company, but only extended the field of its operations.

So far, then, as the rule has been developed by adjudged cases, it appears to be that where the act of a state provides for the organization and incorporation of a company it thereby becomes a corporation of that state, and in that state is a citizen thereof for the purposes of suit, although the same persons, by the same corporate name, have been incorporated, with the same powers and for the same object, by another state; but when the act does not create the corporation, and recognizes it as already existing by the laws of another state, and extends to it like powers (or such of them and with such limitations and on such condition as may be named) as are given it by the laws of the state incorporating it, such act must be construed to be only a license enlarging the field of operations of the company, and said company, upon extending its operations under such an act into the state passing such an act, does not become a corporation of that state, but goes there as the corporation of another state, liable to be sued in the state embracing the new field of its operations, but shorn of none of its qualities as a corporation of another state.

And if the act of Virginia, above referred to, did not incorporate the Baltimore & Ohio Railway in Virginia, and make it a Virginia corporation as to its operation in that state, surely the act of 1870 by this state did not make the complainant a Texas corporation as to its operations in this state. It remains a citizen of Kansas, as such privileged to elect to sue in the United States courts.

On the merits of this controversy the parties in the bill and answer, and their respective assistant affidavits, indulge and exhibit much contrariety of view as to the facts; but I clearly gather from the affidavits, and from the bill and answer, that defendant has changed the location of its line substantially as alleged in the bill, and was threatening and attempting to push a side track across complainant's right of way, crossing the main track and side track of complainant so as to connect with the Central at a point east of complainant's line, and return with said Central's track to defendant's main line, which, at this point, is west of complainant's line, thus crossing complainant's line twice at points not more than 290 feet apart, and less than one mile from the first crossing of complainant's and defendant's railroads; that defendant is advised by its engineer, and its other officers believe, that said connection with the Central is the only one practically possible to be made, and that complainant's engineer advises, and its officers believe, that just as easy and practicable connection with the Central can be made there by the defendant without so placing a side track across complainant's tracks; that complainant's consent so to

cross was not asked, or any offer of compensation of any kind made complainant, but a violent and irregular and unusual effort was being made to push defendant's said track across complainant's right of way without asking any consent, and in defiance of complainant's warning to desist, and that at the time of submitting the bill both parties, with strong construction forces, were standing facing each other at the point in question, indulging the defendant in surprises and night attacks, and such tumult as put the local community in an uproar.

The defendant asserts its right to cross complainant's tracks and right of way without asking the favor or consent of complainant, and, of course, without resort to legal proceedings to compel such consent. This claim it rests upon this language of the constitution of Texas: "Every railroad company shall have the right with its road to entersect, connect with, or cross any other railroad."

Is this part of a sentence, taken from section 1, art. 10, of the constitution, so far self-acting as to give the defendant a license to judge of its own case, and execute its own judgment thereon? The language is general, as the language of constitutions usually is, and where such language is used to restrain action—as restraining execution from taking the homestead, (defining the homestead,) or to specify the powers of some branch of the government or of some officer—it may well be held to be self-operating; but where it can operate only by affirmative action of private parties, and come in sharp conflict with other private interests, such a general provision needs supplementing by appropriate legislation prescribing the regulation of its exercise. I so construe this provision, and am of opinion that the defendant should be restrained from effecting said crossings of complainant's tracks until by negotiation, or by the proper legal proceedings, the defendant shall have fixed its right (with the prescribed or adjudicated limitations) to make said crossings.

Stress is laid by defendant's counsel in his argument on the words "irreparable damage." It is hardly necessary, in this case, to indulge in any philological disquisition on this text. The most common experience has little need of the testimony of experts to aid it in reaching the conclusion that such crossings as this application seeks to have restrained would be such a source of danger of collision in the transit of trains as could not be adequately compensated by any moneyed consideration, and such as should not be permitted except under the pressure of some paramount necessity for the service of the public convenience or of the state. The complainant insists

that no such necessity exists, and asks this court to so adjudge, and to restrain the defendant from resorting to other legal proceedings to compel a right to make said crossing. And in argument of its counsel I am referred to cases in 43 and 66 New York Reports, where the court determined that the property in those cases sought to be condemned was not necessary to be devoted to the use of the companies seeking the condemnation. These cases repose on the language of the New York statute, and, besides this, are cases in the state courts, where, if at all, the right to enforce or refuse such claims to expropriation must, in my opinion, reside. When the right of way over private property, or the right of crossing an established public highway, has been acquired and fixed by the acts of the competent parties, either voluntarily contracting or judicially constrained to consent, then certain common rights attach to this new acquisition of right, and these common rights may be considered by and protected and enforced by this court in any case where the character of the parties brings the case within the jurisdiction of this court. But until this right of way is thus fixed the claim to it is so far in derogation of common right as to require full compliance with all the regulations of the law under which it claimed, including a resort to the particular tribunals by that law set for passing upon such claims and fixing such rights. If the circuit court of the United States can restrain parties from attempting to secure a right of way by process of condemnation under the state laws, could these courts not as well entertain and conduct the proceedings for such condemnation wherever such a party as this complainant was seeking to condemn, and the the adverse party was a citizen of Texas?

In accordance with the foregoing views a temporary injunction will be ordered, but it will not restrain the defendant from attempting to compel by law a right to cross complainant's tracks and right of way.

NOTE. For the purposes of jurisdiction a corporation is conclusively considered a citizen of the state which created it, and under whose laws it was organized, and not of that state under whose laws it has entered to operate its line of railway in connection with another line. *Williams* v. *Missouri, K. & T. R. Co.* 3 Dill. 267. See *Baltimore & O. R. Co.* v. *Cary,* 28 Ohio St. 208; *County of Allegheny* v. *Cleveland & P. R. Co.* 51 Pa. St. 228.

If, however, the effect of the legislation be to adopt the corporation, it becomes, for the purposes of jurisdiction, a corporation created by the state adopting it. *Uphoff* v. *Chicago, St. L. & N. O. R. Co.* 5 FED. REP. 545. And see *C. & W. I. R. Co.* v. *L. S. & M. S. R. Co.* 5 FED. REP. 19, and *Johnson* v. *Philadelphia, W. & B. R. Co.* 9 FED. REP. 6.—[ED.