James D. MORTON, Jr., Donald R. Conley, and Marshall C. Chrablow, a Limited Partnership, d/b/a James D. Morton Jet Sales, Plaintiff,

v.

ALLIED STORES CORPORATION, a Delaware corporation; The Singer Company, a New Jersey corporation; and James C. Welsch, d/b/a Welsch Aviation Company, Defendants.

The SINGER COMPANY, a New Jersey corporation, Third-Party Plaintiff,

v.

LOCKHEED CORPORATION, a California Corporation, Third-Party Defendant.

Civ. A. No. 78–HC–396.

United States District Court, D. Colorado.

May 20, 1981.

Theodore A. Groenke, of McDermott, Will & Emery, Chicago, Ill., for plaintiffs; J. Scott Hamilton, of Hamilton & Hill, Denver, Colo., of counsel.

Walter W. Garnsey, Jr., of Kelly, Haglund, Garnsey & Kahn, Denver, Colo., for defendant James C. Welsch d/b/a Welsch Aviation Company.

## OPINION AND ORDER

CHILSON, District Judge.

Summary judgment of dismissal of this action as to the defendant, Welsch, was entered February 13, 1981.

Presently before the Court is Welsch's claim for judgment against the plaintiff for attorney fees pursuant to 1973 C.R.S. 13–17–101 et seq.

The statute, enacted in 1977, provides for the award of attorney fees in certain cases and in certain circumstances to which we shall later refer.

To apply the statute requires reference to the Court's statement of the basis for the dismissal of the action as to Welsch. The

pertinent parts of the Court's Order of February 13, 1981, setting forth the basis for the dismissal are as follows:

"In 1976, defendant Allied Stores owned Jetstar 5009 as well as a contract with Airesearch Company to modify the airplane to increase its range and performance (a so-called '731 conversion contract'). Allied Stores wanted a new Jetstar to replace its existing Jetstar 5009 but one was not immediately available from the manufacturer Lockheed Corporation.

"The Singer Company owned a different Jetstar aircraft, serial number 5106 (hereafter 'Jetstar 5106') and was actively seeking a priority 731 conversion contract similar to the one owned by Allied Stores. At that time in 1976, there was an eighteen month backlog or waiting period for Airesearch Company 731 conversion contracts.

"The plaintiff was interested in purchasing a turbojet-powered multi-engine airplane similar to the Lockheed Jetstar.

"Airesearch Company, supplier of the 731 conversion contracts, prohibited the sale or exchange of such contracts independent of the subject aircraft.

"The complementary desires of these parties were resolved in a complicated purchase and lease arrangement entered into on April 5, 1976, in Marietta, Georgia. Basically what occurred was that Allied Stores conveyed the Jetstar 5009 to Lockheed Corporation. The Singer Company immediately purchased Jetstar 5009 from Lockheed together with the associated 731 conversion contract with the purchase price being credited to Allied Store's purchase of a new Jetstar. The Singer Company then sold Jetstar 5009 to the plaintiff, retaining the 731 conversion contract for its own plane (Jetstar 5106). The plaintiff then leased Jetstar 5009 to Allied Stores for its use until Allied received delivery of a new Jetstar which it ordered from Lockheed. In this way, Allied Stores was able to order a new Jetstar while continuing to use Jetstar 5009; the Singer Company obtained a high priority 731 conversion contract for its own Jetstar 5106; the plaintiff acquired Jets-

tar 5009 and an immediate lessee; and Airesearch Company was able to enforce its business regulations prohibiting the independent transfer or sale of a 731 conversion contract, while retaining all parties as customers.

"In September of 1977—several months after expiration of the Allied lease—corrosion was discovered in the wing of Jetstar 5009. The plaintiff determined the magnitude of this problem made repair economically prohibitive and rendered the plane unairworthy. As a result, Jetstar 5009 was grounded and eventually sold for salvage in August of 1980.

"In April of 1978, the plaintiff brought this action. Of the original thirteen claims for relief, only six remain—namely the first, fifth, sixth, eighth, tenth, and eleventh claims.

"The first claim alleges a breach by Singer of the agreement whereby Singer sold Jetstar 5009 to plaintiff. The plaintiff asserts that the Singer Company failed to deliver Jetstar 5009 with a 'currently effective Federal Aviation Administration Airworthiness Certificate' as required by Paragraph 2 of the April 5, 1976, purchase and sale agreement, and points specifically to two 'special inspections' and an engine overhaul which it alleges were not timely performed in accordance with the Jetstar Continuing Inspection Plan (CIP) and Handbook of Operating and Maintenance Inspections (HOMI).

"In its fifth claim, the plaintiff alleges that James Welsch, an intermediary in the sale and lease agreements, intentionally defrauded the plaintiff by falsely representing in a letter dated March 18, 1976, that all mandatory maintenance had been performed on Jetstar 5009.

"In its sixth claim, the plaintiff alleges that James Welsch acted as an agent of the Singer Company in these transactions and that his fraudulent misrepresentations may be imputed to the Singer Company under the doctrine of *respondeat superior.*

"In its eighth claim, Allied Stores is similarly alleged to be the principal of James

Welsch and liable under the doctrine of *respondeat superior.*

"The tenth claim asserts that all defendants conspired to defraud the plaintiff in the purchase of Jetstar 5009.

"The eleventh claim alleges that Allied Stores breached the terms of its lease of Jetstar 5009 from plaintiff by failing to operate the aircraft according to standard aviation practices and in failing to maintain the aircraft in an airworthy condition as required by Articles (4) and (6) of the lease agreement.

"The plaintiff has filed motions for partial summary judgment against the Singer Company on the first claim and against the Allied Stores Corporation on the eleventh claim. The defendants have filed joint and separate motions for summary judgment of dismissal of all claims of the plaintiff.

"All of the motions are supported by documentary evidence as permitted by Rule 56 of the Federal Rules of Civil Procedure and by briefs and oral argument.

"With respect to plaintiff's first claim, based on alleged breach by Singer of the sale and purchase agreement, and the plaintiff's eleventh claim based on alleged breach by Allied Stores of its lease agreement with plaintiff, the Court finds and determines that it cannot say with certainty that there are no genuine issues of material fact. On the contrary, the Court is satisfied that there are factual issues which must be resolved in order to establish liability or non-liability as to plaintiff's first and eleventh claims.

"Therefore, all *motions for summary judgment* with respect to plaintiff's first and eleventh claims should be denied.

"With respect to the plaintiff's fifth, sixth, eighth, and tenth claims based on fraud and conspiracy to defraud, the Court finds from the record before it that there is no genuine issue as to any material fact necessary to a determination of said claims.

"All of the plaintiff's fraud claims are premised upon a single operative fact, namely a letter from James Welsch to James D. Morton and James D. Morton and Associates, Inc., dated March 18, 1976. This letter states in its entirety:

'This will acknowledge my inspection of Lockheed Jetstar N717 on March 15, 1976. Subject Jetstar has been owned by Allied Stores, Inc., and based in New York for several years.

'As far as appearance, the interior and exterior are in good condition. The interior is very presentable and shows no sign of being worn or torn. The exterior is also in good condition. This Jetstar is operational and all Avionics were functioning.

'An inspection of the engine and airframe Log Books showed that all mandatory maintenance has been complied [sic] or would be completed prior to delivery. Please advise if you require any additional information regarding Jetstar N717.'

"Without resolving the question of whether this letter was inaccurate in any respect, the Court finds that it amounts to no more than a representation of what the aircraft's condition would be like in the future and therefore cannot constitute the basis for a claim of intentional fraud.[1]

"The Court also finds that there was no reliance by the plaintiff upon the Welsch letter in making its decision to purchase Jetstar 5009.

"It is admitted that plaintiff's unconditional offer to purchase Jetstar 5009 was made on March 9, 1976, and was communicated to the Singer Company (by Telex) bearing that date. The Welsch letter bears the date of March 18, 1976, nine days after the plaintiff made its offer. It is obvious that the plaintiff, in making its decision to purchase Jetstar 5009, did not rely upon the statements contained in the Welsch letter.

---

1. "The Court has read the plaintiff's cases purportedly distinguishing between run-of-the-mill future misrepresentations and future misrepresentations relating to, and occurring before, a contract closing and finds them distinguishable from the facts of this case and therefore unpersuasive."

"The Court finds that there is no genuine issue of material fact which needs to be resolved in order to determine the fifth, sixth, eighth, and tenth claims of the plaintiff and that the defendants' motions for summary judgment of dismissal of these claims should be granted."

Upon this statement, the Court entered a final judgment of dismissal of the plaintiffs' claims against all of the defendants based on fraud and conspiracy to defraud including the claims against Welsch.

No claims for attorney fees are made by the defendants other than Welsch.

In the light of this background, we discuss the contentions of the parties.

## IS THE APPLICATION OF THE STATUTE LIMITED TO CASES BROUGHT IN THE STATE COURTS OF COLORADO?

The statute in question is 1973 C.R.S. 13–17–101 et seq. found in the 1980 Cumulative Supplement to Volume 6 thereof.

The first subsection of 13–17–101 provides:

"Subject to the provisions of subsections (2) and (3) of this section, in any suit involving damages in any court of this state, the court shall award, except as this part 1 otherwise provides, as part of its judgment and in addition to any costs otherwise assessed, reasonable attorney fees."

The plaintiffs contend that this section by its terms limits the award of attorney fees to "in any suit involving money damages *in any court of this state ___*" and therefore this Court, sitting in diversity, cannot apply the statute. (Emphasis supplied).

In 1871, the United States Supreme Court established the rule:

"Whenever a general rule as to property or personal rights, or injuries to either, is established by state legislation, its enforcement by a federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to state limitation."

*Railway Co. v. Whitton's Administrator*, 80 U.S. 270, 13 Wall. 270 at 286, 20 L.Ed. 571 (1871).

This rule has been followed by the Tenth Circuit Court of Appeals in *Stewart v. Ferer*, 163 F.2d 183 at 185 (1947) and *Holt v. King*, 250 F.2d 671 at 675 (1957) and we are not aware of any case law which dissents.

■ We therefore hold that the limitation in the instant statute does not bar its application by this Court in this diversity action.

## DOES THE LAW OF COLORADO OR NEW YORK GOVERN THE AWARD OF ATTORNEY FEES?

Plaintiffs contend the award of attorney fees is governed by the law of New York.

Whether or not the law of New York or the law of some other state is applicable in determining other issues in this case, we do not here decide. However, we hold that the law of Colorado governs the award of attorney fees in this action.

■ In doing so, we follow the decision of the Tenth Circuit Court of Appeals in *Toland v. Technicolor, Inc.*, 467 F.2d 1045 (1972). In *Toland*, the Tenth Circuit, in applying the law of California to other issues in the case, held that the award of attorney fees was governed by the law of Oklahoma where the action was brought.

## IS AWARD OF ATTORNEY FEES GOVERNED BY COMMON LAW OR THE COLORADO STATUTE?

By statute, the Colorado Legislature adopted, so far as applicable, the common law of England. 1973 C.R.S. 2–4–211.

■ However, the Colorado Legislature may at any time by a legislative act, repeal any part of the common law either expressly or by passage of an act inconsistent therewith on any particular subject. *Colorado State Bd. of Pharmacy v. Hallett*, 88 Colo. 331, 296 P. 540 (1931); *Vogts v. Guerrette*, 142 Colo. 527, 351 P.2d 851 (1960).

Plaintiffs contend that the attorney fees statute "is no more than a codification of Colorado common law as expressed in the 'American Rule'" and cites *Davis Cattle Co., Inc. v. Great Western Sugar Co.,* 393 F.Supp. 1165 (D.Colo.1975) in support.

*Davis* holds that under the "American Rule", attorney fees are not recoverable in the ordinary case in the absence of a contract therefore.

■ *Davis* was decided in 1975 and the attorney fees statute was enacted in 1977. The Court holds that *Davis* is not applicable.

■ Plaintiffs further contend that the terms "frivolous" and "groundless" are not defined in the statute and its terms should be defined in the light of the common law. 1973 C.R.S. 2–4–101 states:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

We reject plaintiffs' contention.

The words "frivolous" and "groundless" are words of common usage and are defined in Webster's Third New International Dictionary Unabridged as follows:

"Frivolous" is defined as "of little weight or importance having no basis in law or fact." "Groundless" is defined as "lacking cause or reason for support."

The Court finds no need to resort to the common law to define these words and the Court will use these definitions in its construction of the statute.

### ARE THE FIFTH AND TENTH CLAIMS AGAINST WELSCH FRIVOLOUS OR GROUNDLESS?

The plaintiffs filed two claims against Welsch, the Fifth and Tenth.

The Fifth Claim is based on alleged false representations by Welsch to plaintiff, Morton.

The Court's reasons for summary judgment of dismissal of the Fifth Claim are set forth in the Court's Order of February 13, 1981 (*supra*). In the Order, the Court applied the rule that representations as to future "mandatory maintenance" pending delivery of the aircraft do not constitute a basis for a claim of intentional fraud. Plaintiffs cited cases which they construed as holding contrary to the rule applied by the Court.

■ Although the Court found the cases distinguishable and not persuasive, the fact remains that there was some case law to support the plaintiff's claim. Having some basis in law to support this contention, the Court finds that plaintiff's Fifth Claim is not frivolous or groundless.

■ The Tenth Claim alleges Welsch and the other defendants entered into a conspiracy to defraud plaintiffs and,

"did act in concert to persuade plaintiffs to purchase an aircraft known by said defendants to be in a dangerous, defective, and unworthy condition by virtue of a hidden defect ___."

The Court found no support for this claim in the uncontroverted facts and entered summary judgment of dismissal of the conspiracy claim.

The Court concludes the Tenth Claim is both frivolous and groundless and pursuant to 13–17–101 of the statute, the Court is required to award to Welsch reasonable attorney fees.

### CONSTRUCTION OF COLORADO ATTORNEY FEE STATUTE

We find only one reported case applying this statute. *Wood v. Jensen,* Colo.App., 585 P.2d 309 at 310 (1978). *Wood* does not discuss the questions here involved, holding only:

"___ that, where, as here, a party asserts claims in a subsequent action which were compulsory counterclaims in a former proceeding, the trial court does not err in considering that the claims are frivolous. Therefore, the award of attorney fees was proper."

Consequently, we construe the statute in this case as we believe it would be construed by the Supreme Court of Colorado in a similar factual situation.

Section 13–17–101 § (1) states:

"Subject to the provisions of subsections (2) and (3) of this section, in any suit involving money damages in any court of this state, the court *shall award*, except as this part 1 otherwise provides, as part of its judgment and in addition to any costs otherwise assessed, reasonable attorney fees." (Emphasis supplied)

Section 13–17–102 § 1 states in pertinent parts:

"The Court may exercise its discretion in determining whether attorney fees are to be awarded and as to the amount thereof so that manifest injustice may be avoided."

■ We construe the above provisions of the statute to mean that if the Court determines that plaintiffs' fraud claims are "frivolous" or "groundless", the Court *shall* award attorney's fees unless the Court finds that "manifest injustice" will result in which event the Court "may exercise its discretion in determining whether attorney fees are to be awarded and as to the amount thereof."

Welsch's attorney fees were incurred in defending against both the Fifth and Tenth Claims.

It would be manifestly unjust to award to Welsch the full amount of the attorney fees incurred by him in defending both claims when the Court has found one claim frivolous and the other not.

The Court should exercise its discretion to avoid this manifest injustice and does so in exercising its discretion as to the amount of attorney fees to be awarded.

### AMOUNT OF ATTORNEY FEES

The Court finds that Welsch has incurred attorney fees in opposing the plaintiff's Fifth and Tenth Claims in the total amount of $32,075.00, and that the amount is reasonable for the services rendered by Welsch's attorneys.

For the reasons heretofore stated, an award to Welsch of the entire amount would be manifestly unjust.

The Court determines that manifest injustice would be avoided by awarding to Welsch the sum of $16,000.00 as reasonable attorney fees and requiring each party to pay their own taxable costs.

In awarding attorney fees to Welsch, the Court has taken into consideration all factors including those set forth in 13–17–102 §§ 1(a), (b), (c), (d), (e).

### ORDER

IT IS THEREFORE ORDERED that the defendant, J. C. Welsch, d/b/a Welsch Aviation Company, is entitled to recover judgment against the plaintiffs, James D. Morton, Jr., Donald R. Conley, and Marshall C. Chrablow, d/b/a James D. Morton Jet Sales, jointly and severally, in the amount of $16,000.00, each party to pay their own taxable costs.

The Court expressly determines that there is no just reason for delay in the entry of a final judgment and the Court expressly directs that final judgment in favor of said defendant and against the plaintiffs be forthwith entered in accordance with this Order.