678 P.2d 558 (1983)
INTERNATIONAL TECHNICAL INSTRUMENTS, INC., a Colorado corporation, Plaintiff-Appellee,
v.
ENGINEERING MEASUREMENTS COMPANY, a Colorado corporation, Defendant and Third-Party Plaintiff-Appellant,
v.
Jack R. BAIRD, Third-Party Defendant-Appellee.
No. 80CA1218.
Colorado Court of Appeals, Div. III.
August 18, 1983.
Rehearing Denied September 15, 1983.
Certiorari Denied March 5, 1984.
*560 Hoffman & McDermott, Gerald P. McDermott, William J. Hansen, Denver, for plaintiff-appellee.
Chrisman, Bynum & Johnson, Marvin B. Woolf, Fred C. Brigman, Jr., Boulder, for defendant and third-party plaintiff-appellant.
Mehaffy, Rider, Windholz & Wilson, John R. Mehaffy, Boulder, for third-party defendant-appellee.
BABCOCK, Judge.
In this breach of contract action, defendant, Engineering Measurements Company (EMCO), appeals the judgment of the trial court entered upon jury verdict in the amount of $153,335 for the plaintiff, International Technical Instruments, Inc. (ITI) and the trial court's award of attorney fees in favor of third-party defendant, Jack R. Baird (Baird). We affirm in part and reverse in part.
In July 1976, ITI entered into a written manufacturing agreement with EMCO. EMCO agreed to manufacture and deliver to ITI a specified number of "optical communication links" (OCL), a device that allows wireless communication between two points. In July 1976, the OCL had been engineered and developed, but it had not been produced and marketed.
Baird had been instrumental in the engineering of the OCL. He was employed by ITI as a consultant and was authorized to examine and test the units as they were delivered to ITI.
ITI alleged that EMCO breached the manufacturing agreement by failing to meet delivery schedules and by delivering defective OCL units. EMCO counterclaimed upon the same manufacturing agreement. Baird was joined as a third-party defendant by EMCO.

I.
EMCO contends that Baird tested the units upon delivery and accepted them, on behalf of ITI, by executing an acknowledgment which stated that each unit met or exceeded the technical specifications incorporated in the manufacturing agreement. Therefore, EMCO argues that ITI accepted the goods, did not revoke that acceptance, and is barred from recovering damages for breach of contract. We disagree.
*561 Where acceptance is justifiably revoked pursuant to § 4-2-608, C.R.S.1973, buyer must look to § 4-2-711, C.R.S.1973, for his remedy. On the other hand, "[w]here the buyer has accepted goods and given notification (subsection (3) of section 4-2-607), he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." Section 4-2-714(1), C.R.S.1973.
Section 4-2-607(3)(a), C.R.S.1973, provides that as to accepted goods, "the buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy ...." Thus, the issue here is not one of revocation of acceptance, but one of adequacy of notice of breach.
Notice of breach is legally sufficient when it provides the seller with an opportunity to investigate the buyer's complaint, to correct the alleged defect, or to effect a settlement through negotiation. Hoffman's Double Bar Pine Nursery v. Fyke, 633 P.2d 516 (Colo.App.1981).
Here, there is substantial evidence of adequate notice of EMCO's breach. ITI complained of late delivery in August 1976, December 1976, January 1977, and February 1977. ITI notified EMCO of specific defects and performance deficiencies in the OCLs as early as August 1976, and monthly thereafter, through May 1977. Since there is no statutorily prescribed format for notice of breach, the adequacy of notice of breach is a question of fact for the jury, and the jury's verdict in this regard is binding upon review. Hoffman's Double Bar Pine Nursery v. Fyke, supra.

II.
EMCO next asserts that the trial court erred in permitting the jury to consider an award of consequential damages because the parties agreed that there would be no liability for consequential damages of any nature. We disagree.
ITI claimed as damages its operating expenses and loss of profits. The parties have treated the operating expenses as consequential damages throughout the course of litigation. It being a matter of law, we feel compelled to define the true nature of the damages in this case. This does not alter the result reached with regard to EMCO's contentions concerning exclusion of liability for consequential damages.
We conclude that ITI's operating expenses constitute "loss resulting in the ordinary course of events from the sellers breach ...," § 4-2-714(1), C.R.S.1973, and as such are general damages rather than consequential damages. See § 4-2-715(2)(a), C.R.S.1973. Accordingly, the contractual clause of exclusion relied upon by EMCO has no application to this item of damage.
The difference between the jury verdict and the amount of expenses reflected in ITI's summary of business expenses (Part III, infra), $11,000, may reasonably be inferred to represent an award of loss of profits. This item of damage does constitute consequential damage. Section 4-2-715(2)(a), C.R.S.1973.
Section 4-2-719, C.R.S.1973, provides that the parties to an agreement may limit or exclude consequential damages which would otherwise be recoverable by the buyer under § 4-2-714(3), C.R.S.1973.
The intent of the parties to a contract is to be determined primarily from the language of the document itself, and if the agreement of the parties consists of a written instrument, the determination of the effect of the instrument is a matter of law. Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc., 195 Colo. 253, 577 P.2d 748 (1978). The meaning and effect of a contract is to be determined from an examination of the entire instrument, not merely from isolated clauses or phrases. In re Estate of Haywood, 43 Colo.App. 127, 599 P.2d 976 (1979).
Here, the clause excluding consequential damages appears under the heading *562 of "product liabilities" in the last sentence of the last paragraph of that section, dealing exclusively with limitation of warranty, limitation of remedy in the event of breach of warranty to "repair or replacement," and exclusion of consequential damages. It appears nowhere else in the contract. The trial court's instructions in this case clearly reflect that the plaintiff's case was submitted to the jury upon a theory of breach of contract for delay in performance and nonperformance and not for breach of warranty. Therefore, the trial court did not err in permitting the jury to consider consequential damages.

III.
EMCO also contends that the trial court erred by admitting into evidence the summary of ITI's business transactions showing expenses totaling $142,335.00. EMCO asserts that the underlying records had not been made available to EMCO as required by CRE 1006. We agree.
EMCO conducted no pretrial discovery. However, at a pretrial conference held for the purpose of marking exhibits for trial, EMCO requested that ITI provide it with copies of the material from which the summary was prepared. The request was repeated by telephone a short time later. When the books and records were not made available, EMCO moved for a continuance. Its motion was denied and the trial proceeded as scheduled.
On the fourth day of trial the exhibit was admitted, over EMCO's objection, for the purpose of proving ITI's expenses as an item of damage. It was the only evidence as to this item of damage.
During an in camera hearing concerning the admissibility of the summary, ITI's counsel stated that its witness "was scurrying around Denver early this morning trying to garner those records to have available if counsel wants to see them." While the voluminous records were produced in the courtroom that morning it is clear that they had not been made available to EMCO prior to trial. The summary was admitted into evidence and a 20-minute recess was granted in order to afford EMCO an opportunity to examine the books and records from which the summary had been compiled for purpose of cross-examination.
Under CRE 1006, prior to admission of a summary, the offering party must lay a foundation for, or the parties must stipulate to, the admissibility of the underlying material. See, e.g., People v. Berger-Levy, 677 P.2d 351 (Colo.App.1983); 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 1006[03] (1982). It is a condition precedent to the admission of the summary that the originals or duplicates of underlying material must be made available for examination by other parties at a reasonable time and place. CRE 1006; Square Liner 360 °, Inc. v. Chisum, 691 F.2d 362 (8th Cir.1982); 5 Weinstein's Evidence, supra ¶ 1006[04]. A party's right to examine and inspect the documents or records from which the summary is prepared is not affected by its failure to seek discovery of the underlying materials. Square Liner 360 °, Inc. v. Chisum, supra; Union Electric v. Mansion House, 494 S.W.2d 309 (Mo. 1973); 5 Weinstein's Evidence, supra.
Availability of the underlying documents is mandatory in order that the parties may verify the accuracy of the summary and prepare for cross-examination prior to trial. Square Liner 360 °, Inc. v. Chisum, supra; 5 Weinstein's Evidence, supra. Where the books and records are so voluminous as to require compilation of a summary for presentation at trial, the accuracy of the summary cannot generally be verified by reference to those books and records in a limited period of time. Production of these documents in court on the fourth day of a five day trial does not satisfy ITI's duty under CRE 1006 to make them available to EMCO at a "reasonable time and place."
We conclude that admission of the summary into evidence constitutes reversible error. However, the error pertains only to the issue of damages and not to the issue of EMCO's liability for breach of the agreement.

*563 IV.
Next, EMCO claims that a new business without established earnings history cannot recover loss of profits. We disagree.
Recovery of consequential damages is determined by a test of foreseeability of the consequences of the breach of contract. Prutch v. Ford Motor Co., 618 P.2d 657 (Colo. 1980); see also § 4-2-715(2)(a), C.R.S.1973. Evidence of loss of profit is admissible for consideration by the fact finder in determining the amount of consequential damages if the prospective loss has been shown with reasonable certainty. Cope v. Vermeer Sales & Service of Colorado, Inc., 650 P.2d 1307 (Colo.App. 1982). The absence of prior profits in a newly established business does not create a "per se" exclusion of loss of profit as an item of damage if sufficient competent evidence is proffered. Cope v. Vermeer Sales & Service of Colorado, Inc., supra.

V.
EMCO asserts that the trial court abused its discretion in awarding attorney fees for Baird under § 13-17-101, C.R.S.1973 (1982 Cum.Supp.). EMCO further claims that the trial court's submission of EMCO's breach of contract claim against Baird to the jury precludes an award of attorney fees as a matter of law. We disagree.
ITI filed its complaint against EMCO in June 1978. In November 1978, EMCO filed its third-party complaint against Baird seeking damages for deceit. At the pretrial conference, the trial court dismissed EMCO's deceit action against Baird and redesignated EMCO's claim as one for breach of contract. The prayer for relief in Baird's answer requested that attorney fees be awarded under § 13-17-101, C.R.S. 1973 (1982 Cum.Supp.).
It is undisputed that from the inception of litigation through trial, EMCO conducted no discovery whatsoever. The record in this case reflects that during the trial EMCO nominally attempted to establish its breach of contract claim against Baird. The trial court denied Baird's motion for directed verdict and instructed the jury as to EMCO's breach of express contract claim against Baird. The jury verdict was in favor of Baird, and judgment was entered for Baird upon the verdict.
In concluding that EMCO's action against Baird was groundless and frivolous under § 13-17-101(3), C.R.S.1973 (1982 Cum.Supp.), the trial court made comprehensive findings in support of that conclusion as required by § 13-17-102, C.R.S. 1973 (1982 Cum.Supp.). These findings by the trial court are fully supported by the record in this case and are binding upon review. Page v. Clark, 197 Colo. 306, 592 P.2d 792 (1979).
Although the statute does not define the terms "frivolous" or "groundless," the trial court defined a claim or defense as frivolous "if the proponent can present no rational argument based on the evidence or law in support of his or her claim or defense." The trial court defined a groundless claim as "one in which the complaint contains allegations sufficient to survive a motion to dismiss for failure to state a claim, but which are not supported by any credible evidence at trial." We adopt the trial court's definitions of these terms in this context. See Morton v. Allied Stores Corp., 90 F.R.D. 352 (D.Colo.1981).
We conclude that there was no abuse of discretion in the trial court's award of attorney fees in this case. Our conclusion in this regard is unaltered by the trial court's having submitted EMCO's breach of contract claim against Baird to the jury. The trial court recognized that failure to grant the motion for directed verdict was not dispositive of the issue of attorney fees and reasoned that, after a 5-day trial of a complex commercial action, the risk of exposing the parties to further expensive litigation in the event of an erroneous directed verdict was unwarranted. We agree and conclude that, under the circumstances of this case, the interests of judicial economy were served by submitting EMCO's breach of contract claim against Baird to the jury. 9 C. Wright & A. Miller, Federal Practice & Procedure § 2533 at 585-586 (1971). *564 Section 13-17-103, C.R.S.1973, provides that "if, on appeal, the appellate court determines that a party is entitled to reasonable attorney fees for any stage of proceedings prior to appellate proceedings, then... that party shall also be entitled to reasonable attorney fees for the appellate proceedings."
EMCO has not appealed the judgment in favor of Baird upon the merits of its claim. Although we agree that EMCO's claim against Baird was groundless and frivolous, the sole issue raised by EMCO on appeal is whether the trial court's submission of EMCO's claim to the jury precluded an award of attorney fees as a matter of law. EMCO presented rational argument, based upon the law, in support of its claim of error in this regard, and thus did not present a frivolous issue on appeal. However, but for EMCO's groundless and frivolous claim against Baird in the trial court, this issue concerning attorney fees would never have come before us on appeal. For this reason, we remand, pursuant to § 13-17-103, C.R.S.1973, for determination and award by the trial court of reasonable attorney fees incurred by Baird in the defense of this appeal.

VI.
EMCO generally alleged in its motion for new trial numerous erroneous evidentiary rulings by the trial court. These allegations of error are not sufficiently specific to have been preserved for review. Hitti v. Montezuma Valley Irrigation Co., 42 Colo.App. 194, 599 P.2d 918 (1979).
The judgment of the trial court in favor of ITI against EMCO is affirmed as to liability, but is reversed as to the award of damages and the cause is remanded for new trial on the damages issue.
The judgment of the trial court in favor of Baird against EMCO is affirmed and the cause is remanded for determination of reasonable attorney fees to be awarded Baird in defense of this appeal in accordance with § 13-17-103, C.R.S.1973 (1982 Cum.Supp.).
VAN CISE and KELLY, JJ., concur.